957 P.2d 1099

STATE of Idaho, Plaintiff–Respondent,

v.

Urbano **HERRERA-BRITO,**
Defendant–Appellant.

No. 23206.

Court of Appeals of Idaho.

April 2, 1998.

Rehearing Denied June 9, 1998.

John M. Adams, Kootenai County Chief Public Defender; J. Bradford Chapman, Deputy Public Defender, argued, Coeur d'Alene, for appellant.

Alan G. Lance, Attorney General; Kevin J. Wladyka, Deputy Attorney General, Boise, argued, for respondent.

PERRY, Judge.

Urbano Herrera–Brito appeals from his judgment of conviction and sentence for attempted second degree murder, I.C. §§ 18–4001, 4002, 4003, and the sentence enhancement imposed for the use of a firearm during the commission of the crime, I.C. § 19–2520. We vacate the judgment of conviction and remand to the district court.

I.

## FACTS AND PROCEDURE

Around midnight on April 4, 1995, Herrera–Brito sat in a bar in Coeur d'Alene drinking cranberry juice and reading the paper. Martin Nunez entered the bar, saw Herrera–Brito and hit him without warning or provocation. Herrera–Brito did not fight back. Nunez continued to beat Herrera-

Brito as the altercation moved outside. Eventually, Herrera–Brito was knocked unconscious on the concrete in front of the bar. Witnesses told Nunez to leave, so he walked to a saloon one block down the street and around the corner from the bar. Herrera–Brito was unconscious when Nunez left the scene.

Herrera–Brito regained consciousness. A waitress and a bar patron asked him if he was alright and if he would go inside. Herrera–Brito responded that he was alright and was going home.

Nunez left the saloon about five minutes after he entered because it was closing. He walked to his van, which was parked in an alley, and sat in the driver's seat. Nunez then exited the vehicle and decided to walk home either because the van did not start or because his headlights did not work. As Nunez approached the front of his van, he saw a man standing twenty feet from him. The man pointed a pistol at Nunez and fired three times. One bullet struck Nunez, went through his chest and then struck him in the arm. Nunez took cover in the van, at which time the shots stopped and the man left the scene. Minutes later, Nunez approached a nearby house and requested help. The police and an ambulance arrived shortly thereafter.

When the police arrived, Nunez stated that he was shot by a black man. Nunez told the police at the hospital that the man who shot him was the same black man that he fought with earlier that night, but he did not know the man's name. Two days later Nunez identified Herrera–Brito, out of six photographs, as the person who shot him.

Herrera–Brito was charged with attempted first degree murder and use of a firearm during the commission of the crime. A jury found Herrera–Brito guilty of attempted second degree murder and use of a deadly weapon during the commission of the crime. The district court entered a judgment of conviction and sentenced Herrera–Brito to a unified fifteen-year sentence, with five years fixed. Herrera–Brito timely appealed.

## II.

## DISCUSSION

Herrera–Brito raises five issues on appeal. However, because we are vacating the district court's judgment of conviction and remanding for a new trial, we need only address three issues. We will determine whether there was sufficient evidence to support the jury's verdict, whether the district court correctly interpreted and applied the firearm enhancement statute and whether the district court properly instructed the jury on the elements of attempted murder in the second degree.

### A. Sufficiency of the Evidence

We must first address whether there was sufficient evidence presented at his trial for the jury to find Herrera–Brito guilty. If not, Herrera–Brito is entitled to an acquittal and should not be faced with a retrial on the charge. Herrera–Brito argues that the testimony was insufficient to support a jury's finding that he was the person who shot Nunez. Herrera–Brito further contends that the testimony failed to show he intended to kill Nunez.

Appellate review of the sufficiency of the evidence is limited in scope. A judgment of conviction, entered upon a jury verdict, will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Knutson,* 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct.App. 1991); *State v. Decker,* 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct.App.1985). We will not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson,* 121 Idaho at 104, 822 P.2d at 1001; *Decker,* 108 Idaho at 684, 701 P.2d at 304. Moreover, we will consider the evidence in the light most favorable to the prosecution. *Knutson,* 121 Idaho at 104, 822 P.2d at 1001; *Decker,* 108 Idaho at 684, 701 P.2d at 304.

■ Nunez testified at trial that he saw Herrera–Brito point the gun and shoot at him. Eyewitness testimony is substantial competent evidence upon which a jury can rely. It is in the province of the jury to determine the credibility of witnesses. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. Thus, the jury verdict withstands Herrera–Brito's challenge.

■ Herrera–Brito also claims there was insufficient evidence to prove he had the specific intent to kill. This argument ignores two well-settled principles:

> First, the jury may find specific intent to murder either from direct or circumstantial evidence. Secondly, they may also infer such intent from the acts and conduct of the accused, the nature of the weapon used by the defendant and the manner in which it was used, taken together with all other circumstances in the case. More specifically the jury may infer the intent to murder where the defendant has unlawfully used a deadly weapon, provided he used it in a way indicating an intention to kill.

*State v. Warden*, 100 Idaho 21, 24, 592 P.2d 836, 839 (1979) (citations omitted). Nunez testified that Herrera–Brito stood twenty feet away and fired three shots. One shot struck Nunez in the chest and seriously injured him. The jury could infer from these acts that Herrera–Brito intended to kill Nunez. Therefore, there was substantial competent evidence upon which the jury could rely in determining that Herrera–Brito shot Nunez with the intent to kill.

## B. Firearm Enhancement

■ Initially, the district court did not allow the state to go forward with the allegation that Herrera–Brito was subject to a sentence enhancement for use of a firearm. However, after briefing and oral argument by the parties, the district court permitted the state to amend its information to include the sentence enhancement.

Herrera–Brito contends that the district court erred when it interpreted I.C. § 19–2520, which allows for a fifteen-year sentence enhancement when certain crimes are committed while using a firearm or deadly weapon. Herrera–Brito claims the plain language of the statute prohibits its application to attempted second degree murder or in the alternative that the statute is ambiguous in its application to that crime. Therefore, he argues it is a violation of due process to charge him with this enhancement because a "statute defining a crime must be sufficiently explicit so that all persons subject thereto may know what conduct on their part will subject them to its penalties." *State v. Hahn*, 92 Idaho 265, 267, 441 P.2d 714, 716 (1968).

Herrera–Brito also claims that an interpretation of the statute to apply it to attempted murder would violate the rule of lenity, which requires that criminal statutes be strictly construed in favor of the accused. *State v. Mills*, 128 Idaho 426, 429, 913 P.2d 1196, 1199 (Ct.App.1996). Herrera-Brito asserts that even if I.C. § 19–2520 can be read to include attempted crimes, such a reading would be a strained conclusion in violation of the rule of lenity.

The state responds that the statute is clear and unambiguous. It contends that because the statute includes all degrees of murder, and an attempt to commit any crime listed in the statute, rules of construction and interpretation need not be applied by this Court.

■ The construction and application of a legislative act presents a pure question of law that we review freely. *State v. Browning*, 123 Idaho 748, 749, 852 P.2d 500, 501 (Ct.App.1993). When a statute is unambiguous, it must be interpreted in accordance with its language, courts must follow it as enacted and a reviewing court may not apply rules of construction. *State v. Wiedmeier*, 121 Idaho 189, 191, 824 P.2d 120, 122 (1992). Transcending this principle is the rule of lenity, which pronounces that criminal statutes should be strictly construed in favor of the accused. *Mills*, 128 Idaho at 429, 913 P.2d at 1199. A statute defining a crime must be sufficiently explicit so that people know what conduct will subject them to its

penalties. *State v. Thompson,* 101 Idaho 430, 437, 614 P.2d 970, 977 (1980), *citing Hahn,* 92 Idaho at 267, 441 P.2d at 716. An act cannot be held criminal under a statute unless it clearly appears from the language used that the legislature so intended. *Id.*

Idaho Code Section 19–2520 [1] reads, in its applicable portions:

> Any person convicted of a violation of sections ... 18–4003 (degrees of murder) ... who displayed, used, threatened or attempted to use a firearm or other deadly weapon while committing or attempting to commit the crime, shall be sentenced to an extended term of imprisonment.

Although this language is not a model of grammatical construction, we think that it clearly and unambiguously expresses a legislative intent that anyone who attempts to commit murder while using a deadly weapon will be subject to the extended term of imprisonment.[2] Because we conclude the statute is unambiguous, we must interpret it in accordance with its language and we may not apply the rules of construction. *Wiedmeier,* 121 Idaho at 191, 824 P.2d at 122. Further-

more, this statute is sufficiently explicit to put people on notice that if they commit attempted murder of some degree by using a deadly weapon, they will be subject to the penalties therein. Therefore, the district court did not err when it permitted the state to charge Herrera–Brito with a firearm enhancement.

## C. Jury Instructions for Attempted Murder in the Second Degree

 Herrera–Brito contends the district court erred because jury instruction 13, which purported to list the elements of murder in the second degree, did not include the intent element.[3] The Idaho Supreme Court recently addressed this issue in *State v. Buckley,* 131 Idaho 164, 953 P.2d 604 (1998). In *Buckley,* the same district court used an identical jury instruction and the defendant was convicted of attempted second degree murder. The Supreme Court held that the district court erred by not including the intent element in the instruction. To convict a defendant of an attempt crime, the state must prove that the defendant intended to commit the crime. *Buckley, supra.* Thus, in

---

**1.** The first paragraph of I.C. § 19–2520 states:

Any person convicted of a violation of sections 18–905 (aggravated assault defined), 18–907 (aggravated battery defined), 18–909 (assault with intent to commit a serious felony defined), 18–911 (battery with intent to commit a serious felony defined), 18–1401 (burglary defined), 18–1508(3), 15–1508(4), 15–1508(5), 18–1508(6) (lewd conduct with minor or child under sixteen), 18–2501 (rescuing prisoners), 18–2505 (escape by one charged with or convicted of a felony), 18–2506 (escape by one charged with or convicted of a misdemeanor), 18–4003 (degrees of murder), 18–4006 (manslaughter), 18–4015 (assault with intent to murder), 18–4501 (kidnaping defined), 18–5001 (mayhem defined), 18–6101 (rape defined), 18–6501 (robbery defined), 37–2732(a) (delivery, manufacture or possession of a controlled substance with intent to deliver) or 37–2732B (trafficking), Idaho Code, who displayed, used, threatened, or attempted to use a firearm or other deadly weapon while committing or attempting to commit the crime, shall be sentenced to an extended term of imprisonment. The extended term of imprisonment authorized in this section shall be computed by increasing the maximum sentence authorized for the crime for which the person was convicted by fifteen (15) years.

**2.** This legislative intent is confirmed by the title on the bill enacted in 1993 by which the words "or attempting to commit" were added to the statute. According to the title, the purpose of this amendment was "to expand the application of the crime to include attempting to commit all the listed crimes."

**3.** Instruction 13 charged the jury:

In order for the defendant to be guilty of Attempted Murder in the Second Degree, the State must prove each of the following:
1. On or about April 4, 1995;
2. in the State of Idaho;
3. the Defendant, URBANO HERRERA–BRITO, engaged in conduct which would have caused the death of Martin Nunez;
4. the Defendant acted without justification or excuse;
5. with malice aforethought;
If you find that the State has failed to prove any of the above, then you must find the defendant not guilty of attempted murder in the second degree. If you find that all of the above have been proven beyond a reasonable doubt then you must find the defendant guilty of attempted murder in the second degree.

this case, to find that Herrera–Brito committed the crime of attempted murder in the second degree, the jury would be required to find that he intended to kill Nunez. In accordance with *Buckley*, we conclude that the district court erred in its instructions to the jury. Therefore, Herrera-Brito is entitled to a new trial at which the jury will be properly instructed.

### III.

### CONCLUSION

We vacate the judgment of conviction and remand the case to the district court.

LANSING, C.J., and SCHWARTZMAN, J., concur.