IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39073

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 581 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: July 12, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| JERED JOSIAH WILSON, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Gem County. Hon. Juneal C. Kerrick, District Judge.

Judgment of conviction for one count of failure to register as a sexual offender, vacated; judgment of conviction for two counts of lewd conduct with a minor under the age of sixteen, affirmed.

Sara B. Thomas, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Jered Josiah Wilson appeals from his judgment of conviction for one count of failure to register as a sexual offender his judgment of conviction for two counts of lewd conduct with a minor under the age of sixteen. For the reasons set forth below, we vacate the judgment of conviction for one count of failure to register as a sexual offender and affirm the judgment of conviction for two counts of lewd conduct with a minor under the age of sixteen.

I.

FACTS AND PROCEDURE

Wilson first registered in Idaho as a sexual offender in 2003. In 2008, an officer received information alleging manual-genital contact between Wilson and his daughter. The officer located Wilson and conducted an interview. Wilson denied the allegations. Shortly after the interview, Wilson completed an Idaho sexual offender registry notification and registration form

1

to report a change of address because he moved from Adams County to Gem County. In March 2009, the Idaho State Police (ISP) received a signed address verification form dated February 5 indicating Wilson still resided in Gem County. In March, Wilson moved and established a residence in Oregon without providing notice as required by I.C. § 18-8309(2). The ISP sent an address verification form to Wilson's Gem County address in June and an annual registration form in October. Both were returned with a forwarding address to a post office box in Nampa. In May 2010, Wilson was stopped while driving in Oregon and arrested for an outstanding Idaho warrant which had been issued when Wilson was charged with failure to provide notice of his move to Oregon. Wilson was then charged with failure to register as a sexual offender. I.C. § 18-8307. In a separate case, Wilson was charged with two counts of lewd conduct with a minor under the age of sixteen as a result of the allegations involving his daughter. I.C. § 18-1508. The cases were consolidated for trial. At trial, after the state rested its case, Wilson moved for judgment of acquittal pursuant to I.C.R. 29. The district court reserved ruling on the motion and submitted the case to the jury. Wilson was found guilty of all three charges.[1] Thereafter, the district court denied Wilson's Rule 29 motion and sentenced Wilson to a determinate term of ten years for failure to register and to concurrent unified terms of life imprisonment, with minimum periods of confinement of ten years, for the two counts of lewd conduct. Wilson appeals.

## II.

## ANALYSIS

### A.     Judgment of Acquittal

Wilson argues the district court erred by denying his motion for judgment of acquittal. Specifically, Wilson asserts the evidence presented to the jury was insufficient to sustain the jury's guilty verdict for failure to register as a sexual offender because the state proved Wilson moved to Oregon and, therefore, pursuant to the plain language of I.C. § 18-8307, he was relieved of the duty to register annually in Idaho.

Idaho Criminal Rule 29 provides that when a verdict of guilty is returned, the court, on motion of the defendant, shall order the entry of a judgment of acquittal if the evidence is

---

[1]     Wilson was also found guilty of failure to provide notice of a change of address to another state. I.C. § 18-8309(2). The district court sentenced Wilson to a determinate term of ten years to run concurrent with his sentence for failure to register. Wilson does not challenge his judgment of conviction for failure to provide notice and does not challenge any of his sentences.

2

insufficient to sustain a conviction of the offense. The test applied when reviewing the district court's ruling on a motion for judgment of acquittal is to determine whether the evidence was sufficient to sustain a conviction of the crime charged. *State v. Fields*, 127 Idaho 904, 912-13, 908 P.2d 1211, 1219-20 (1995). When reviewing the sufficiency of the evidence where a judgment of conviction has been entered upon a jury verdict, the evidence is sufficient to support the jury's guilty verdict if there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We do not substitute our view for that of the jury as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). The words must be given their plain, usual, and ordinary meaning, and the statute must be construed as a whole. *State v. Hart*, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001). If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* It is incumbent upon a court to give an ambiguous statute an interpretation which will not render it a nullity. *Id.* Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004). Statutes that are *in*

*pari materia*, *i.e.*, relating to the same subject, should be construed harmoniously, if possible, so as to further the legislative intent. *State v. Gamino*, 148 Idaho 827, 828, 230 P.3d 437, 438 (Ct. App. 2010).

In our analysis, we apply the statutes as they existed in 2009. Idaho Code Section 18-8307(4)(a) provided:

> Within two (2) working days of coming into any county to establish permanent or temporary residence, an offender shall register with the sheriff of the county. The offender thereafter shall register annually. . . . If the offender intends to reside in another state, the offender shall register in the other state within ten (10) days of moving to that state.

In order to complete the annual registration, the ISP must mail a nonforwardable notice of registration to the offender's last reported address. I.C. § 18-8307(5)(b). Idaho Code Section 18-8307(5)(c) required that, "within five (5) days of the mailing date of the notice, the offender shall appear in person at the office of the sheriff with jurisdiction for the purpose of completing the registration process." Idaho Code Section 18-8309(2) provided that, if an offender changed address to another state, the offender was required to provide written notice of the new address within five working days after the change to the ISP.

The language of I.C. § 18-8307(4)(a) and I.C. § 18-8309(2) unambiguously relieved an offender of the duty to register annually in Idaho once the offender moved to another state. Even if the statute could be considered ambiguous, a construction of the statute that would require an offender that moved to another state to continue to register in Idaho for life by appearing annually in person in Idaho would lead to an absurd result. Additionally, the rule of lenity requires that ambiguous criminal statutes should be read narrowly and be construed in favor of the defendant. *State v. Anderson*, 145 Idaho 99, 103, 175 P.3d 788, 792 (2008). Thus, once Wilson moved to Oregon, he was relieved of the duty to register annually in Idaho. Accordingly, there was insufficient evidence to support the jury's guilty verdict for failure to register as a sexual offender.

**B.      Sufficiency of the Evidence**

Wilson argues the state failed to present substantial evidence to support Wilson's conviction for lewd conduct with a minor under the age of sixteen because it failed to provide evidence of manual-genital contact. As noted above, appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is

substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *Decker*, 108 Idaho at 684, 701 P.2d at 304. Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

At trial, Wilson's daughter testified as follows:

[DAUGHTER]    He--he touched me in an inappropriate place.
[COUNSEL]    You're talking about your dad?
[DAUGHTER]    Um-hmm. Yes.
[COUNSEL]    And tell me what happened when you drove--when your dad drove you from your home in Twin Falls to Emmett and back. Tell me what happened in the car.
[DAUGHTER]    He touched me and stuff.
. . . .
[COUNSEL]    When you say he touched you, can you show me where on your body he touched you?
[DAUGHTER]    Right here (indicating).
[COUNSEL]    Okay. Can you show me a little closer to your body?
[DAUGHTER]    Right here (indicating).
[COUNSEL]    Okay. And tell me about how he touched you on your clothes.
[DAUGHTER]    He--
[COUNSEL]    Was it under your clothes or over your clothes?
[DAUGHTER]    Both sometimes.
[COUNSEL]    Okay. Tell me about the times he touched you under your clothes. What did he touch you with?
[DAUGHTER]    His hands.
[COUNSEL]    And how did he get under your clothes?
[DAUGHTER]    He--I don't know. He made me unzip my pants and stuff.
[COUNSEL]    Did that happen in the car?
[DAUGHTER]    Yes.
[COUNSEL]    Do you know if the car was moving or if it was stopped?
[DAUGHTER]    It was moving.
[COUNSEL]    And he'd make--did he make you unzip your pants?
[DAUGHTER]    Um-hmm.
[COUNSEL]    And then what did he do?

[DAUGHTER]          Then he touched me.

[COUNSEL]          With--how did he do that?  With what?

[DAUGHTER]          His bare hands.

[COUNSEL]          Do you have a name for the place where he touched you on you?

[DAUGHTER]          No.

[COUNSEL]          Did he touch you--you said with your hand, it was kind of your lap area.  Would it be your private area?

[DAUGHTER]          Yes.

[COUNSEL]          So he went under your pants with your zipper down.  Did he go under your underwear?

[DAUGHTER]          No.

[COUNSEL]          But on top of your underwear?

[DAUGHTER]          Yeah.

[COUNSEL]          Did that kind of thing happen in his house in Emmett too?

[DAUGHTER]          Yes.

[COUNSEL]          Tell us what--tell me what happened in Emmett.

[DAUGHTER]          He wanted me to take off my clothes and stuff.

[COUNSEL]          He made you take off your clothes?

[DAUGHTER]          Like my pants and stuff.

[COUNSEL]          So he made you take off your pants.  What part of his--were you at his house?

[DAUGHTER]          Yes.

[COUNSEL]          What room?

[DAUGHTER]          His room.

[COUNSEL]          And when he made you take off your pants, what about his clothes?  What did he do with them?

[DAUGHTER]          He unzipped his pants and--and that stuff.

[COUNSEL]          And when he unzipped his pants, did he--did you--did he have you touch him?

[DAUGHTER]          Yes.

[COUNSEL]          Tell me about that. . . .  Tell me what he did.

[DAUGHTER]          He pulled my hand over and made me touch him.

[COUNSEL]          Where did he have you touch him?  Where did he put your hand?

[DAUGHTER]          Right here (indicating).

[COUNSEL]          In your lap area again?

[DAUGHTER]          Um-hmm.

[COUNSEL]          Did he do that on your--on his skin?  Did he put your hand on his skin?

[DAUGHTER]          Yes.

[COUNSEL]          What'd it feel like?

[DAUGHTER]          Nasty and disgusting.

[COUNSEL]          When he had your clothes off, did he touch you when your clothes were off at his house?

| | |
|---|---|
| [DAUGHTER] | Yes. |
| [COUNSEL] | And tell--tell me where he touched you. . . . |
| [DAUGHTER] | Right here (indicating). |
| [COUNSEL] | In your lap area again? |
| [DAUGHTER] | Yep. |
| [COUNSEL] | And that was when your clothes were all off; right? |
| [DAUGHTER] | Not all of them. Just my pants. |
| [COUNSEL] | Okay. So your pants were off and he touched your- |
| [DAUGHTER] | Yes. |
| [COUNSEL] | He touched your skin? |
| [DAUGHTER] | Yes. |

. . . .

[COUNSEL] When he touched you in the car . . . and you say he touched you on top of his clothes and under his clothes, did he touch you on the skin sometimes in your car?

| | |
|---|---|
| [DAUGHTER] | Yes. |
| [COUNSEL] | Sometimes on the skin of your private area? |
| [DAUGHTER] | Yes. Sometimes, I think. |
| [COUNSEL] | It's hard to remember what-- |
| [DAUGHTER] | Yeah. |
| [COUNSEL] | --the different times were? |
| [DAUGHTER] | Um-hmm. |
| [COUNSEL] | Is that because it happened a lot? |
| [DAUGHTER] | Yeah. |

Wilson argues that, given this testimony, the record does not reflect evidence of manual-genital contact. Specifically, Wilson concludes that, at best, the record reveals manual-private area contact and that area is not necessarily the genitals.

Again, this Court will not substitute our view for the trier of fact as to reasonable inferences to be drawn from the evidence and will consider evidence in the light most favorable to the prosecution. It was reasonable for the jury to infer Wilson's daughter was referencing manual-genital contact throughout her testimony. Additionally, the officer who received information alleging manual-genital contact between Wilson and his daughter and interviewed Wilson regarding the allegations testified at trial as follows:

[COUNSEL] [Officer], were you assigned to investigate a sex abuse evaluation of [Wilson] . . . ?
[OFFICER] Yes, I was.
[COUNSEL] When did that investigation start?
[OFFICER] September 9 of 2008 is when I received the initial information.
[COUNSEL] And did that--how did that come about?

[OFFICER] I'd received a copy of a DVD video from [a worker] . . . with the Henry County Children's Division in Missouri. It was a forensic interview with an adolescent female.

[COUNSEL] And who was it?

[OFFICER] [Wilson's daughter].

[COUNSEL] And what was the--did you--were there allegations of criminal conduct made that required to you investigate?

[OFFICER] There were.

[COUNSEL] What were they?

[OFFICER] They were of manual to--or hand-to-genital contact between [Wilson] and [his daughter].

[COUNSEL] What did you do when you received the allegation--the video with those allegations in it from [Wilson's daughter]?

[OFFICER] I watched the video and--to determine what the allegations specifically were, and then I began to try and locate [Wilson].

. . . .

[COUNSEL] When you located [Wilson], what did you do?

[OFFICER] I set up--I contacted him via telephone, and he agreed to meet with me at the Adams County Sheriff's Office up in Council. So I made a trip up there on September 25 and conducted an interview with him.

. . . .

[COUNSEL] And the subject matter of that interview was the sexual molestation that [Wilson's daughter] had alleged to the Child Safe interviewer in Missouri?

[OFFICER] Yes, that's correct.

[COUNSEL] Can you summarize for us what [Wilson] told you when you interviewed him up there in Council?

[OFFICER] I specifically asked him--told him why I was there, the allegations about touching her, her vaginal area, on several occasions in a vehicle. He denied it. He--he offered that this possibly could have been misconstrued from him putting a seat belt on her in the vehicle while they were traveling or when she would fall asleep and he would help make her more comfortable in the vehicle. He ultimately denied the allegations altogether, though.

[COUNSEL] Were you able to find any way to reconcile the manual-genital contact that [Wilson's daughter] described with the inadvertent contact that [Wilson] was talking about.

[OFFICER] I'm not sure exactly what you're asking me.

[COUNSEL] Were you--was the contact that you were investigating something that could have been something that happened while you were putting a seat belt on your child?

[OFFICER] No, I don't believe so.

[COUNSEL] You were talking to him about putting his hand on [his daughter's] bare genitalia; right?

[OFFICER] Correct.

[COUNSEL] And putting [her] hand on [Wilson's] bare genitalia?

[OFFICER] Yes, that's correct.

> [COUNSEL]   And he said that that may have happened while he was putting her seat belt on?
>
> [OFFICER]    That's the explanation he offered to me when talking about that.

Given this testimony, in combination with reasonable inferences that could be drawn from the testimony of Wilson's daughter, we conclude there is substantial evidence upon which a reasonable trier of fact could have found the prosecution sustained its burden of proving manual-genital contact between Wilson and his daughter beyond a reasonable doubt.

## III.

## CONCLUSION

There was insufficient evidence to support the jury's guilty verdict for failure to register as a sexual offender because, once Wilson moved to Oregon, he was relieved of the duty to register annually in Idaho. Therefore, Wilson has demonstrated the district court erred by denying his motion for judgment of acquittal. There is substantial evidence upon which a reasonable trier of fact could have found the prosecution sustained its burden of proving manual-genital contact between Wilson and his daughter beyond a reasonable doubt. Accordingly, Wilson's judgment of conviction for one count of failure to register as a sexual offender is vacated and his judgment of conviction for two counts of lewd conduct with a minor under the age of sixteen is affirmed.

Judge LANSING and Judge GRATTON, **CONCUR.**