**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44515**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2017 Unpublished Opinion No. 654 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 30, 2017 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| LEVIE RAYMOND BULLOCK, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Samuel A. Hoagland, District Judge.

Judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Levie Raymond Bullock appeals from the district court's judgment of conviction for aiding and abetting robbery. He argues the State failed to present substantial evidence to show that Bullock had the intent to aid or abet the commission of robbery. Alternatively, Bullock argues that failure to present a portion of a comment to Idaho Criminal Jury Instruction 312 as a separate jury instruction amounts to fundamental error. The district court's judgment of conviction is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

The facts of this case were developed by witness testimony at trial. The State called four different witnesses who testified about the alleged robbery. Bullock testified in his defense but called no other witnesses. At times, Bullock testified to a different version of events than the State's witnesses, as is noted below.

1

Around midnight, Bullock was in bed with his then fiancée, Amber Lopez, when Brandee Moseby and Devin Elmore barged into Bullock's residence and entered Bullock's bedroom. After Bullock told them to leave the bedroom, he and Lopez dressed and went to the living room to talk to Moseby and Elmore, where they were joined by two other individuals Bullock did not recognize. Moseby accused Bullock of robbing her house because only he and one other individual, Z.W., knew where she lived. Bullock denied that he had robbed Moseby's house, but invited her to search his residence. While Moseby searched the residence, Elmore pulled a container of bug spray from a box and sprayed Lopez in the face. Bullock started yelling at Elmore, but after Elmore showed Bullock he had a gun, Bullock attempted to de-escalate the situation. Not finding any of her stolen possessions, Moseby yelled at Lopez that her possessions must be with Z.W. and that she wanted Bullock and Lopez to come with her to Z.W.'s residence. Bullock and Lopez went with Moseby, Elmore, and the two unidentified individuals and drove to Z.W.'s residence. Bullock testified he and Lopez went with Moseby and the others because they feared Elmore with his gun and gang affiliation.

They arrived at and entered Z.W.'s apartment a few hours later. Upon entering, they saw that Z.W., depending on the testimony, was either having a seizure or just had a seizure brought on by his methamphetamine use. J.L., Z.W.'s then fiancée, was attending to Z.W. Also present were M.B. and M.O. Z.W. testified that he was in and out of a seizure during the events that unfolded afterward but was conscious enough to observe some of the events. According to Bullock, however, Z.W. was conscious for the entire encounter and lucid enough to speak with those at his residence.

Moseby began yelling at J.L. about her stolen possessions and asked for permission to search the residence. J.L. granted permission. Moseby, Lopez, and Bullock began searching through Z.W.'s crawl space. J.L. testified that Bullock and others also searched through other parts of the residence. Bullock testified that he only searched through the crawl space. J.L. testified that Bullock placed items belonging to Z.W. and J.L. into a laundry hamper. Some of the items were a gaming console, video games, a DVD player, the victims' phones, CDs, clothing, and movies. However, Bullock testified that he did not place any items into the laundry hamper and only touched a cellphone which he handed to Moseby who then placed the phone into the laundry hamper. At some point, J.L. noticed that Elmore had a gun with him. Moseby, Lopez, and Devin threatened J.L. that if she reported them to the police she would regret it,

intimating they would target J.L. first and then Z.W. When J.L. told Moseby to stop taking her possessions, Elmore slammed her against a wall and told her to sit down and shut up. J.L. testified that Moseby, Elmore, Bullock, Lopez, and at least one of the unidentified individuals then loaded the possessions into a vehicle and left as a group. However, Bullock testified that Moseby instructed Bullock and Lopez to take M.B. out to M.B.'s vehicle to search it, but rather than searching the vehicle, all three left and walked away.

Bullock was charged with four counts of robbery, two of which were dismissed before trial. The State proceeded to trial on count I, for aiding and abetting the robbery of Z.W.'s video game console, video games, DVD player, clothing, and money; and on count III, for aiding and abetting the robbery of J.L.'s money and cell phone. During the jury's deliberations, the jury sent a question to the district court that read: "What is the dictionary's definition of 'abetted,'" to which the district court replied: "To abet another to commit a crime is to command, procure, counsel, encourage, induce, or assist." On count I, the jury could not reach a verdict, so the State dismissed it. On count III, the jury returned a guilty verdict against Bullock. Bullock received a unified sentence of ten years, with one year determinate. He timely appeals.

## II.

## STANDARD OF REVIEW

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Substantial evidence may exist even when the evidence presented is solely circumstantial or when there is conflicting evidence. *State v. Severson*, 147 Idaho 694, 712, 215 P.3d 414, 432 (2009); *State v. Stevens*, 93 Idaho 48, 50-51, 454 P.2d 945, 947-48 (1969). In fact, even when

3

circumstantial evidence could be interpreted consistently with a finding of innocence, it will be sufficient to uphold a guilty verdict when it also gives rise to reasonable inferences of guilt. *Severson*, 147 Idaho at 712, 215 P.3d at 432; *State v. Slawson*, 124 Idaho 753, 757, 864 P.2d 199, 203 (Ct. App. 1993).

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

### III.

### ANALYSIS

Bullock argues the State failed to present substantial evidence to show that he had the intent to aid or abet the commission of robbery. Alternatively, Bullock argues that failure to present a portion of a comment to ICJI 312 as a separate jury instruction amounts to fundamental error.

### A. The Jury's Verdict Is Supported by Substantial Evidence

At trial, the State called four different witnesses who testified about the alleged robbery. Bullock was the only witness for his defense. At times, the testimony of the witnesses was inconsistent with each other, as noted above. This is not uncommon. Such inconsistencies are resolved by the jury, which, by a judgment of credibility of the witnesses, make findings about the course of events in a case. In order to reach its verdict that Bullock was guilty of aiding and abetting robbery, the jury necessarily determined that Bullock's testimony was less credible than that of the other witnesses. Here, although conflicting, there is substantial evidence upon which a reasonable jury could have found the State met its burden of proving the elements of aiding and

4

abetting robbery beyond a reasonable doubt. The jury was not required to accept Bullock's testimony that he travelled to Z.W.'s residence against his will, did not go through the victims' possessions, only ever touched J.L.'s cell phone, and never placed anything into the hamper. The evidence demonstrated that Bullock accompanied several individuals, one of whom was armed, into the apartment, Bullock assisted in searching the apartment and placing items in a laundry hamper, and Bullock left with the same individuals. The jury could reasonably conclude that Bullock shared the intent of the individuals he assisted. Because we do not review the jury's credibility determinations and because we conclude there was adequate testimony at trial about Bullock's actions to support a conviction for aiding and abetting robbery, we affirm the jury's verdict and the district court's judgment of conviction.

**B.      Failure to Present a Portion of a Comment to Idaho Criminal Jury Instruction 312 as a Separate Jury Instruction Does Not Amount to Fundamental Error**

Alternatively, Bullock argues that the district court's failure to provide a separate instruction to the jury amounts to fundamental error. Specifically, Bullock argues that the jury was not properly instructed on the issue of intent because the district court did not read a portion of the comment to ICJI 312, which reads: "The mental state required is generally the same as that required for the underlying offense--the aider and abettor must share the criminal intent of the principal and there must [be] a community of purpose in the unlawful undertaking." Bullock maintains this argument even though he made no objection to the jury instructions below.

Excluding the comment to ICJI 312 from the given jury instructions does not amount to fundamental error in this case. A review of the instructions given to the jury shows that the jury was properly instructed on the issue of criminal intent specific to aiding and abetting robbery. Instruction 16 explained the State must prove that:

1. On or about June 24, 2015
2. in the State of Idaho
3. [J.L.], also known as [], had possession of personal property,
4. which the defendant Levie Raymond Bullock aided, abetted, assisted or helped in taking the property from her person or from her immediate presence,
5. against her will,
6. by the intentional use of force or fear to overcome her will, and
7. with the intent [to] permanently [] deprive her of the property.

Instruction 18 explained:

> The law makes no distinction between a person who directly participates in the acts constituting a crime and a person who, either before or during its commission, intentionally aids, assists, facilitates, promotes, encourages,

5

counsels, solicits, invites, helps or hires another to commit a crime with intent to promote or assist in its commission. Both can be found guilty of the crime. Mere presence at, acquiescence in, or silent consent to, the planning or commission of a crime is not [in the absence of a duty to act] sufficient to make one an accomplice.

Instruction 19 explained: "Intent under Idaho law is not an intent to commit a crime but is merely the intent to knowingly perform the act committed."

Bullock argues that under the *Perry* fundamental error test, failure to provide the comment to ICJI 312 to the jury is a violation of his unwaived right to due process of law. We agree that if the jury had not been properly instructed concerning intent, such an error would violate Bullock's right to due process of law. *Perry*, 150 Idaho at 227 n.6, 245 P.3d at 979 n.6. However, the jury was properly instructed both on the required action and the intent of Bullock during the commission of the crime.

Instruction 16 in this case made clear for the jury that Bullock had to engage in certain behavior--aiding or abetting--with the requisite intent--the intent to permanently deprive J.L. of her property. While the jury submitted a question to the district court about the definition of the word abetted, that does not mean the jury was confused about Bullock's intent. The jury's question, "What is the dictionary's definition of 'abetted?'" sought clarification about what behavior or actions constituted aiding and abetting, the fourth element of the crime listed in Instruction 16, not the level of intent required, the seventh element of the crime. This can be seen by the district court's answer to the jury's question, which concerned only behaviors or actions: "To abet another to commit a crime is to command, procure, counsel, encourage, induce, or assist." In fact, Instruction 16's fourth element and the district court's answer to the jury's question deal only with behavior and action. The same is true of Instruction 18--it describes behaviors and actions by defining aiding and abetting as more than mere "presence at, acquiescence in, or silent consent to" commission of the crime.

If the jury had found Bullock's testimony to be credible, thereby concluding that he was merely present at or acquiesced in the crime, then the jury would have necessarily found Bullock's actions did not rise to the level of aiding and abetting and it would have been acquitted him of the robbery charge. However, the jury rejected Bullock's testimony and concluded his behavior comported with the behavioral element of aiding and abetting. The jury then had to consider the additional elements of the crime, including intent.

6

In addressing the intent element of robbery, the district court provided the jury with two instructions: the seventh element of Instruction 16 and Instruction 19 which defined the meaning of intent as "intent to knowingly perform the act committed." Instruction 16 incorporated the text of ICJI 312, requiring Bullock intended to permanently deprive J.L. of her property. The district court did not need to provide an additional instruction from the comments of ICJI 312, that Bullock had to have the same criminal intent as the principals (the intent to permanently deprive J.L. of her property), as the jury had already received that instruction in Instruction 16. To provide a third instruction on intent with the same content would have been duplicative. Therefore, the jury was properly instructed and Bullock's right to due process of law was not violated.

## IV.
## CONCLUSION

The jury's verdict is supported by substantial evidence. Failure to present the portion of the comment to ICJI 312 as a separate jury instruction does not amount to fundamental error. We affirm the district court's judgment of conviction.

Chief Judge GRATTON and Judge GUTIERREZ **CONCUR**.