**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 51458**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: April 24, 2025** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| DEDRICK J. SELENSKY FOUST, aka | ) **OPINION AND SHALL NOT** |
| DEDRICK J. SELENSKY-FOUST | ) **BE CITED AS AUTHORITY** |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Third Judicial District, State of Idaho, Adams County. Hon. Matthew J. Roker, District Judge.

Judgment of conviction, affirmed.

Crafts Law Inc.; Charles C. Crafts, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Elizabeth H. Estess, Deputy Attorney General, Boise, for respondent.

GRATTON, Chief Judge

Dedrick J. Selensky-Foust appeals from the judgment of conviction for felony unlawful killing, possession, or wasting wildlife with a combined damage of over one thousand dollars and misdemeanor unlawful taking of game (failure to retrieve).

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Selensky-Foust was charged with two felony fish and game violations related to the taking of elk, specifically, unlawful killing, possessing, or wasting wildlife with a combined damage of over one thousand dollars, Idaho Code § 36-1402(f)(2), and barter or sale of wildlife unlawfully taken, I.C. § 36-1402(f)(6). Selensky-Foust was also charged with two misdemeanor counts related to a bear, failure to properly tag game, I.C. § 36-409(d), and unlawful taking of game (failure to retrieve), I.C. § 36-1101(a). A jury acquitted Selensky-Foust on the barter or sale of

1

wildlife unlawfully taken charge and convicted him on the remaining charges. Selensky-Foust filed a motion for new trial which the district court denied.[1] Selensky-Foust appeals.

## II.

## STANDARD OF REVIEW

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

The interpretation of a statute is an issue of law over which we exercise free review. *Aguilar v. Coonrod*, 151 Idaho 642, 649-50, 262 P.3d 671, 678-79 (2011).

## III.

## ANALYSIS

Selensky-Foust claims that there was insufficient evidence to find him guilty of unlawful killing, possessing, or wasting wildlife with a combined damage of over one thousand dollars because there was insufficient evidence to find that he unlawfully killed two elk. Selensky-Foust also claims there was insufficient evidence to find him guilty of failure to retrieve a bear because the offense was not yet consummated, and also, he was prevented from doing so by the game warden.

---

[1] The motion for new trial was based on allegations in the information regarding an unaccounted-for elk (referred to herein as Elk No. 2). The district court denied the motion for new trial because Selensky-Foust waived his objections to the information by not bringing them prior to trial.

## A. Unlawful Killing, Possessing, or Wasting Elk

The evidence at trial showed that Selensky-Foust shot an elk (Elk No. 1) and did not immediately possess it. Selensky-Foust's emails, presented as evidence to the jury, indicated that he was unable to find it until two or three days later. When he found the elk, the meat was spoiled. Selensky-Foust did not tag the elk; instead, he took the skull cap with antlers and the ivories from the elk. Selensky-Foust possessed only one elk tag. Despite his emails to the contrary, Selensky-Foust testified that, in fact, he did not believe it was the elk that he shot.

The evidence showed that Selensky-Foust thereafter shot a second elk (Elk No. 2), but did not recover it. The State contends that the jury could have concluded from the evidence that Selensky-Foust did not make a reasonable effort to recover this elk, and thus, illegally wasted it or that he took the elk in excess of his bag limit because he had already killed one elk.

The evidence showed that two days later Selensky-Foust shot a third elk (Elk No. 3). Selensky-Foust tagged the elk, took possession, and delivered the elk to the meat packing house to be properly processed.

Leaving aside Elk No. 2, the State claimed at trial that Elk No. 1 was unlawfully taken because it was not tagged, and that Elk No. 3 was illegal, even though it was tagged with a valid tag, because it exceeded the bag limit of one. Selensky-Foust contends the State's legal theory is unsupported by law and the facts. He argues that he had one legal elk tag and he used it on one elk, which happened to be Elk No. 3. The only elk that was illegal was Elk No. 1, since Selensky-Foust did not tag it when he harvested the antlers and ivories. When he took Elk No. 3, he still had an unused elk tag and used it at that time. Selensky-Foust asserts that while he may well have been guilty of a crime concerning Elk No. 1, because he did not tag it, that does not make Elk No. 3 illegal. Selensky-Foust contends that there was insufficient evidence to find him guilty of the felony since the reimbursable damage assessment for one elk is $750, which is less than the required felony amount of $1,000. In other words, both elk must be illegal for the offense to be a felony.[2]

---

[2] The jury was instructed, pursuant to Idaho Code § 36-1404(a)(1), that the reimbursable damage for elk was seven hundred fifty dollars ($750) per animal killed, possessed, or wasted, and that the amount doubled for each additional animal of the same category killed, possessed, or wasted during any twelve (12) month period. Thus, for three elk killed within the same period, the amount would be $5,250: $750 for the first elk, $1,500 for the second elk, and $3,000 for the

The State contends that it presented sufficient evidence that Elk No. 1 was illegally killed and possessed when Selensky-Foust removed its antlers and ivories without tagging it. Elk No. 2 was illegally wasted when Selensky-Foust, after shooting it, failed to make reasonable efforts to retrieve it. Selensky-Foust unlawfully killed and possessed Elk No. 3 because, having already taken at least one elk, it was over his bag limit of one.

The State charged Selensky-Foust with unlawfully killing (or attempting to kill), possessing, or wasting three elk within a twelve-month period, with a combined reimbursable damage assessment of over one thousand dollars pursuant to I.C. § 36-1401(c)(3). The jury was required to find that at least two of the three elk were taken unlawfully. The jury was instructed pursuant to I.C. § 36-1401(c)(3):

1. On or between September 9, 2020, and September 14, 2020
2. in the state of Idaho
3. the defendant Dedrick J. Selensky-Foust
4. within a twelve (12) month period
5. did unlawfully kill, possess, and/or waste wildlife
6. having a combined reimbursable damage assessment of more than one-thousand dollars ($ 1,000).

Instruction 17, provided:

> In order for big game to be lawfully possessed, hunters must affix a validated game tag to the animal as soon as the hunter knows the animal is killed.
> In order for big game to be lawfully possessed, the animal cannot be taken in excess of the hunter's bag limit. The bag limit for elk in general season is one (1) elk unless an additional out-of-state tag is procured.
> No person hunting may wound or kill any big game animal, upland game animal, game bird, or fur-bearing animal without making a reasonable effort to retrieve it and reduce it to possession.

"Take" was defined to include killing or possessing; "possession" was defined as knowledge of the wildlife's presence and physical control; and "bag limit" was defined as the maximum number of wildlife which may be legally taken or killed for any particular period of time.

The evidence at trial showed that on September 9, 2020, Selensky-Foust shot a bull elk (Elk No. 1) and tracked it, but did not locate it until September 11. When he located the elk, he removed and possessed its skull cap and ivories without tagging it. Selensky-Foust acknowledges

_____

third elk. Therefore, the State could not meet its burden of proving more than $1,000 combined reimbursable damage with a single elk but could meet its burden by showing two or more unlawfully killed, possessed, or wasted elk.

that he illegally killed and possessed Elk No. 1 "because he did not tag it when he took the antlers from it." On September 12, Selensky-Foust shot a second elk (Elk No. 2). The State contended that he did not make reasonable efforts to recover this elk, and thus, illegally wasted it or that he took the elk in excess of his bag limit because he had already killed and possessed one elk. Selensky-Foust points to statements made by the prosecutor and the district court about Elk No. 2 on the motion for new trial. Selensky-Foust's motion for new trial was based on disregard of the second elk by the State in its arguments to the jury, yet allegations as to that elk being illegally killed remained in the information. The district court denied the motion for new trial. While Selensky-Foust argues that Elk No. 2 should be ignored because the State did not argue its significance; he does not claim that the evidence was insufficient to find that he shot Elk No. 2 or failed to make reasonable efforts to recover it. Finally, the evidence at trial showed that Selensky-Foust killed, possessed, tagged, and processed a third elk (Elk No. 3).

Selensky-Foust contends that nowhere in the statutes or administrative rules does the State's theory appear, that if an elk is taken illegally then the tag is no longer valid such that the next elk taken and tagged is actually an illegal elk because it exceeds the bag limit. As an initial matter, this Court can and does affirm the jury verdict on the basis of the admitted illegal taking of Elk No. 1 and the existence of sufficient evidence by which the jury could have determined that Selensky-Foust shot and failed to take reasonable efforts to recover Elk No. 2. Nonetheless, Selensky-Foust's claims relative to a finding that he illegally killed and possessed Elk No. 1 and legally possessed and killed Elk No. 3 because he still had an unfilled tag are without merit.

Selensky-Foust confounds bag limit and tag limit. As set forth in jury instruction no. 17, "In order for big game to be lawfully possessed, the animal cannot be taken in excess of the hunter's bag limit. The bag limit for elk in general season is one (1) elk unless an additional out-of-state tag is procured." Selensky-Foust bagged Elk No. 1 when he harvested the antlers and ivories. He was not allowed by law to bag another elk, whether he tagged it or not. That he tagged Elk No. 3 does not change the fact that it was his second or third bagged elk, which violates the law. I.C. § 36-1402(f)(2). *See also* Idaho Administrative Procedures Act 13.01.08.200; 13.01.08.320; 13.01.08.400.02. Selensky-Foust has cited nothing for his proposition that only legally taken elk count against his bag limit.

At the hearing on the motion for new trial, the following colloquy took place:

THE COURT: And so, if you can explain to me [PROSECUTOR] that aspect. In other words, some may argue that defendant was allowed, because he had a valid tag, to take one elk. And so if he took two elk, is one of them still considered a valid elk or are both of them now considered to be nonvalid elk because he didn't put his tag on the first one, but he put the tag on the second one that everyone agrees that he went through the process of butchering it out, doing everything you're supposed to do on that. So if you could address that issue.

[PROSECUTOR]: Yes, Judge. You bet. The first elk was not tagged. And so that elk was illegal. The second elk, as--and you mentioned he does have a tag, but the second elk was in excess of bag limits. As you instructed the jury that day, you cannot take a second elk after you've taken a first because you only have a bag limit of one. So it's illegal because of bag limits. He could have, had he not originally taken the first elk, and then--I mean, he could have tagged the first one and it would have been legal. He did not. Instead, he decided to pretend like it was not tagged. And then, the third one--or that he had found a deadhead. And then, the other elk that he actually did take, he tagged, but he did--it was in excess of bag limits. And that was the instruction that you did give to the jury. So that's the reason that it was illegal.

Contrary to Selensky-Foust's argument, the prosecutor was correct. Elk No. 1 was, admittedly, illegally possessed for failure to tag and Elk No. 3 was illegally possessed in excess of bag limits. Substantial evidence supports the jury's guilty verdict.

**B.     Failure to Retrieve Bear**

Selensky-Foust was charged with failure to retrieve a bear after killing it in violation of I.C. § 36-1101(a). Selensky-Foust testified that after he shot Elk No. 3 and delivered it to the processor, he went hunting because he had predator tags; mountain lion, bear, wolf. He shot a bear, brought it up the hill, and took a picture of himself and the bear. Selensky-Foust testified that it was his first bear and he did not know what to do. He knew that the meat of the bear need not be taken, but the head and hide that proves sex must be taken and delivered to Fish & Game. Selensky-Foust determined to talk to an experienced bear hunter and was doing so when the warden arrived.

The trial evidence showed that approximately seven hours after Selensky-Foust shot the elk, the game warden arrived at Selensky-Foust's hunting camp to investigate after receiving text messages, photographs, and phone calls related to illegal hunting from Selensky-Foust's former

hunting partner. The warden interviewed Selensky-Foust for approximately one hour and fifteen minutes. Selensky-Foust did not disclose to the warden that he shot a bear until after Selensky-Foust was shown the text he had sent to his former hunting partner earlier containing a photograph of Selensky-Foust with the black bear that stated, "Look who shot a bear over his first dead elk[']s carcass." Selensky-Foust then told the warden that he did not tag the bear or retrieve it because he did not know what to do and needed assistance. Selensky-Foust told the warden that the bear was still on the hillside and he intended to go get it. The warden seized Selensky-Foust's unused bear tag and informed him not to retrieve the bear because it was illegal to be in possession of an untagged or improperly tagged bear. The warden testified at trial:

> Q    Okay. So what did you do with that information?
> A    At the time, I cited him for--I issued him a citation for failure to properly tag and I believe I also issued a citation for failed to retrieve. So while it is not necessary to retrieve the meat of a bear, it is necessary to take the head and a portion or the entire hide that contains the evidence of sex, whether or not it's a male or a female, and those items have to be presented to the Idaho Fish & Game within a 10-day period.

Selensky-Foust claims the game warden seized his bear tag and prevented him from retrieving his bear even though there was no legal requirement for him to retrieve it that day. Selensky-Foust asserts that he had ten days to present the head and hide to Fish & Game and that he did not have them in his possession on the first day of his ten days is irrelevant and not a crime. Thus, there was not a consummated crime of failure to retrieve. Further, there was insufficient evidence of intent because he expressed his intent to retrieve the bear but was not allowed to do so by the warden. By seizing his unfilled tag and ordering him not to retrieve the bear, the warden made it impossible for Selensky-Foust to comply with the law when he expressed an intent to do so. Selensky-Foust argues that while he is undisputably guilty of not immediately tagging the bear, he cannot be guilty of failing to retrieve the bear since the game warden prevented him from doing so. Thus, there was insufficient evidence to convict him of failure to retrieve the bear.

"No person may wound or kill any big game animal without making a reasonable effort to retrieve it and reduce it to possession." (3-20-20) IDAPA 13.01.08.401. "As soon as any person kills any wildlife for which a tag is required, said tag, belonging to him, must be validated and attached to said wildlife in a manner provided by commission rule." I.C. § 36-409(d). The evidence at trial established that Selensky-Foust shot the bear and, after photographing himself with the bear, left it on the mountain for approximately seven hours before the warden encountered

Selensky-Foust. While Selensky-Foust attempts to overlay the requirement to deliver the head and hide bearing sex identification to Fish & Game within ten days onto the requirement to take reasonable efforts to retrieve the bear, he cites no authority for his argument. A party waives an issue on appeal if either argument or authority is lacking. *Powell v. Sellers*, 130 Idaho 122, 128, 937 P.2d 434, 440 (Ct. App. 1997).

Selensky-Foust challenges the sufficiency of the evidence to sustain the guilty verdict of failure to retrieve the bear. As noted, a finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101. Moreover, the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence are for the jury. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001. The evidence at trial showed that Selensky-Foust did not immediately tag the bear and had not retrieved the bear approximately seven hours after it was shot. The jury was free to judge the credibility of Selensky-Foust's explanation and intent, including that he initially did not tell the warden that he had shot a bear and, being an inexperienced bear hunter, required the assistance of a more experienced bear hunter to determine how to process the bear for a period of several hours. Substantial evidence supports the jury's guilty verdict.

## IV.

## CONCLUSION

Substantial evidence supports the jury's guilty verdict of unlawful killing, possessing, or wasting wildlife with a combined damage of over one thousand dollars and failure to retrieve wildlife. Therefore, the district court's judgment of conviction is affirmed.

Judge TRIBE and Judge Pro Tem MELANSON **CONCUR**.