553 So.2d 1377 (1989)
Michael Edward GARRISON, Appellant,
v.
STATE of Florida, Appellee.
No. 89-00669.
District Court of Appeal of Florida, Second District.
December 27, 1989.
*1378 Susan W. Harrell, Fort Myers, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee and Dell H. Edwards, Asst. Atty. Gen., Tampa, for appellee.
ALTENBERND, Judge.
Mr. Garrison appeals the order setting restitution which was entered following his plea of nolo contendere to a charge of grand theft. The trial court set restitution at $20,198, based upon the retail price of several trenching machines which were stolen by the defendant. We affirm the trial court's order and hold that, under the facts of this case, the trial court properly relied upon the victim's retail price to measure the victim's "damage or loss caused directly or indirectly by the defendant's offense" for purposes of section 775.089, Florida Statutes (1987).
The victim, Mr. Terry Riley, had invented a portable trenching machine and had been issued a patent in 1984 to protect his invention. Thereafter, doing business as Quick Trench, Mr. Riley marketed a line of portable trenching machines. He had not licensed anyone else to manufacture the machine and apparently had no major competitors.
In 1987, Mr. Riley contracted with Custom Machine in Cape Coral, Florida, to fabricate some of the parts for the machines and to assemble them. Mr. Riley stored his new machines in his own warehouse facility, which was adjacent to Custom Machine. The defendant apparently worked at Custom Machine and stole fifteen of the newly assembled machines. Mr. Riley discovered the theft when he learned that someone was selling his machines for half price in the Fort Myers area.
During the subsequent investigation, two of the fifteen machines were returned in new condition and no restitution was requested for those machines. Of the thirteen remaining machines, two were discovered in the possession of new owners who apparently had purchased the machines from the defendant, two were returned in useless condition, and nine were never returned. The stolen machines included two different models. One model cost $900 to manufacture, wholesaled for $1,695, and retailed for $1,995. The other model cost $700 to manufacture, wholesaled for $1,395, and retailed for $1,695. The victim testified that eighty per cent of his machines were sold by him at retail and twenty per cent were wholesaled to distributors. The defendant did not testify at the restitution hearing. The defendant did not explain the whereabouts of the nine missing machines. He did not provide any evidence to suggest that he had sold the machines in a wholesale market. The trial court awarded restitution based on the retail price of all thirteen machines without any additional damages for interest or other consequential damages.
The defendant argues that the trial court, by awarding retail value, awarded the victim either lost profits or consequential damages arising out of the theft. He argues that the undefined "damage or loss" for which restitution is permitted under section 775.089(1)(a), Florida Statutes (1987), does not include such remote losses. Additionally, the defendant argues that the victim's restitution award improperly exceeds the damages which the victim could receive as a plaintiff in a civil suit. In light of the rule requiring construction of the restitution statute most favorable to the defendant, his arguments warrant analysis. § 775.021(1), Fla. Stat. (1987).
We do not need to determine in this case whether the restitution statute permits an award of lost profits or consequential damages *1379 because the trial court's award can be fully supported as a reimbursement for the fair market value of the stolen property. Fair market value of the property at the time of the theft is a well established measure for restitution. Abbott v. State, 543 So.2d 411 (Fla. 1st DCA 1989); Norman v. State, 468 So.2d 1063 (Fla. 1st DCA), review denied, 479 So.2d 118 (Fla. 1985). "Fair market value" is generally defined as "the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell." Black's Law Dictionary 537 (5th ed. 1979).
In this case, both parties agree that fair market value should be the measure of restitution. They simply disagree on the relevant market. The trial court had evidence concerning three markets: 1) the market in which the victim purchased the materials for his machines; 2) the market in which the machines sold at wholesale; and 3) the market in which the machines sold at retail. In setting restitution, we believe that the trial court could consider the two markets in which the victim sold his machines, as well as the market in which the victim bought his materials.
A trial court is entitled to consider evidence of an item's original market cost, its use, its general condition, and its percentage of depreciation in determining fair market value for restitution. Abbott. In this case, the cost to manufacture may be the original market cost of the trenching machines, but the machines were "used" by the victim as inventory for sale. The machines were new and had not depreciated. Prior case law establishes that a victim can receive lost future lease payments as restitution for the theft of a leased television set, instead of receiving the set's reduced replacement cost as a used television set. Wilson v. State, 452 So.2d 84 (Fla. 1st DCA), review denied, 461 So.2d 116 (Fla. 1984). Likewise, a victim should be entitled to prove that the stolen inventory had a greater value than merely its replacement cost. In this case, the state even established that the defendant was selling some of the machines in the retail market and was competing with the victim in that market. The defendant presented no evidence to suggest that the retail market was not the relevant market to establish fair market value.
The defendant suggests that the victim should not be entitled to restitution at the retail price because the defendant himself sold the machines at only half price. The issue, however, is not the measure of the benefit received by the defendant, but rather the loss sustained by the victim. United States v. Anglian, 784 F.2d 765 (6th Cir.), cert. denied, 479 U.S. 841, 107 S.Ct. 148, 93 L.Ed.2d 89 (1986).
We recognize that the victim's restitution cannot exceed the amount of damage caused directly or indirectly by the criminal offense. Fresneda v. State, 347 So.2d 1021 (Fla. 1977); Wilson. Assuming that the victim's damages for criminal restitution are limited by the same measures of damage available to the victim in a civil action, it is very clear this order of restitution does not exceed those civil measures. See Gillette v. Stapleton, 336 So.2d 1226 (Fla. 2d DCA 1976); Foliage Corp. of Fla. v. Watson, 381 So.2d 356 (Fla. 5th DCA 1980); Bank of Miami v. Tambourine, 218 So.2d 507 (Fla. 3d DCA 1969); 18 Am.Jur.2d Conversion §§ 117-121 (1985); § 772.104, Fla. Stat. (1987).
Under the evidence presented to the trial court, that court could reasonably conclude that Mr. Garrison effectively stole thirteen retail sales from the victim, and that the victim was entitled to be reimbursed for those thirteen retail sales at the fair market value established by the retail price.
Affirmed.
SCHOONOVER, A.C.J., and THREADGILL, J., concur.