169 P.3d 275

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Katherine SMITH, Defendant–Appellant.**

No. 31830.

Court of Appeals of Idaho.

Aug. 1, 2007.

Review Denied Oct. 19, 2007.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Thomas Tharp, Deputy Attorney General, Boise, for respondent.

PERRY, Chief Judge.

Katherine Smith appeals from her judgment of conviction for three counts of grand theft. Specifically, Smith asserts her sentences are excessive under the facts. Smith also appeals from the district court's order denying her I.C.R. 35 motion and from the district court's order of restitution. For the reasons set forth below, we affirm in part,

reverse in part, and remand for further proceedings.

## I.

## FACTS AND PROCEDURE

The victim in this case owned an outdoor recreation store which employed Smith as an office manager. Over the course of Smith's one-year employment, she conducted a series of illegal transactions, forgeries, and thefts. Smith purchased several all-terrain vehicles (ATVs) and other equipment using her own in-house credit account. Smith then retained the equipment herself or sold it under the guise of it being her property without paying for the equipment. Smith often deleted any record of the transactions from her in-house account. Smith also deposited four company checks into her account which she authorized by forging the victim's signature on each check. Finally, an audit, completed after Smith's termination, revealed the victim also suffered a significant cash shortage during Smith's employment.

Smith was charged with ten counts of grand theft. I.C. §§ 18–2403(1); 18–2407(1)(b). Pursuant to a plea agreement, Smith pled guilty to three of the counts and, in exchange for the dismissal of the other counts, agreed to pay restitution for all charged and uncharged criminal conduct against the victim. Smith was released on her own recognizance. Smith failed to appear on the date set for sentencing after having absconded to Alaska.[1] The state located Smith in Alaska and extradited her to Idaho. Upon her return, Smith was sentenced to two concurrent unified terms of ten years, with minimum periods of confinement of two years, and a consecutive unified term of five years, with a minimum period of confinement of one year. Smith filed a Rule 35 motion, which the district court denied.

The district court initially ordered Smith to pay the victim restitution in the amount of $273,882.65. The order was subject to review and alteration after an evidentiary hearing. Subsequently, the district court ordered the retailer to submit an amended affidavit in support of restitution. The affidavit asserted the value of the equipment taken, less the items returned, plus the actual lost wages and out-of-pocket losses resulting from the criminal conduct equaled $118,396.14. After an evidentiary hearing, the district court ordered Smith to pay restitution in the amount of $100,296.84. Smith appeals.

## II.

## ANALYSIS

On appeal, Smith asserts that the district court abused its discretion by imposing sentences that were excessive under the facts of the case. Smith also contends the district court abused its discretion in denying her Rule 35 motion. Finally, Smith challenges the amount of restitution she was ordered to pay arguing the district court abused its discretion in deciding the sum so ordered.

### A. Sentence Review

■ Smith asserts that she was physically and sexually abused as a child, has a family history of mental health issues, expressed remorse for her actions, is a first-time offender, and has employment available to her in Alaska. Smith argues the district court imposed an excessive sentences in light of these mitigating factors. We disagree.

■ An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett,* 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct.App.2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice,* 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to

---

1. Smith had also sought to withdraw her guilty plea prior to fleeing to Alaska but, based upon her failure to appear for a hearing on that motion, the district court denied the motion. Smith does not raise this as an issue on appeal.

achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App.1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender and the protection of the public interest. *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982).

Several other facts in the record nullify the mitigating factors argued by Smith. While Smith stated her actions were "stupid" and she felt "horrible" about them, she also attempted to either justify her actions or shift some of the responsibility for her crimes away from herself to other parties. After pleading guilty, Smith fled from Idaho to Alaska. In the updated PSI, while Smith concedes this action was "foolish," she again attempts to, at least partially, blame the conduct of her trial counsel for her flight.

█ In addition to the significant direct monetary damage, the victim nearly lost his business, and his credit rating was seriously damaged by Smith's crimes. Even though these are Smith's first criminal convictions, the PSI indicates Smith has pro-criminal attitudes as well as weak problem-solving and self-regulation skills, putting her at risk of re-offending. A period of incarceration will allow her to engage in supervised rehabilitation programs. Additionally, the district court exercised reason in establishing a twelve-year indeterminate term for the Commission of Pardons and Parole to have supervision over Smith to better enforce the substantial restitution she has been ordered to pay. This is particularly so as not only did Smith initially flee to avoid sentencing, but during that time, she also failed to work or save toward paying any portion of the restitution.

The district court appropriately crafted the sentences to balance a need for deterrence and rehabilitation with the need for restitution. The sentences allow for the possibility of parole in three years so that Smith can begin to repay the victim while still under the supervision of the Commission of Par-dons and Parole. Therefore, we conclude the district court did not abuse its discretion in the sentences it imposed upon Smith for the three charges of grand theft.

## B. Rule 35 Motion

█ Smith asserts that the district court abused its discretion in denying her Rule 35 motion. Smith argues that the length of her sentences was based on the original amount of restitution and not the final amount of restitution ordered by the district court. Smith contends that the length of her sentences should be reduced to reflect the final amount of the amended restitution order.

█ Initially, we note that an order denying a motion for reduction of a sentence under Rule 35 is reviewed for an abuse of discretion. Both our standard of review and the factors to be considered in evaluating the reasonableness of the sentence are well established. *See State v. Hernandez,* 121 Idaho 114, 822 P.2d 1011 (Ct.App.1991); *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct.App. 1984); *Toohill,* 103 Idaho 565, 650 P.2d 707. If the sentence is found to be reasonable at the time of pronouncement, the defendant must then show that it is excessive in view of the additional information presented with the motion for reduction. *Hernandez,* 121 Idaho at 117, 822 P.2d at 1014.

The amended order of restitution was the only new information presented in support of Smith's Rule 35 motion. The length of the sentences imposed was not based solely upon the amount of restitution ordered. The district court also considered the financial damage to the victim beyond the value of the items stolen, the nature of the crimes committed, that Smith fled Idaho after pleading guilty, and her failure to take responsibility for her actions. Furthermore, while the restitution was ultimately significantly reduced, it remains a substantial sum and the district court's reasoning in providing a lengthy term of incarceration and supervision to help enforce the restitution order remains valid. Therefore, we conclude the sentences are not excessive even in view of the reduced restitution, and no abuse of discretion has been shown.

## C. Order for Restitution

The district court's order of restitution awarded the victim restitution in seven categories of financial loss. On appeal, Smith challenges the awarded amounts in three of those categories—the difference in value of three ATVs used and then returned by Smith, items invoiced by Smith to her in-house account but never paid for, and items allegedly stolen by Smith but not invoiced to her account.

Specifically, Smith argues the district court erred in awarding the retail value for all of the items, rather then the dealer cost value; that the district court incorrectly calculated the restitution owed for the three returned ATVs; that the district court abused its discretion in not reducing the restitution award to reflect payments she allegedly made to the victim for items invoiced on her account; that the state failed to demonstrate that an ATV invoiced to her account ever existed; and that the district court erred in ordering restitution for the noninvoiced items that the victim failed to prove were taken from the store or in not crediting her with noninvoiced items that were allegedly returned.

▮ The decision whether to order restitution, and in what amount, is within the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19–5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Richmond,* 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct.App.2002); *State v. Russell,* 126 Idaho 38, 39, 878 P.2d 212, 213 (Ct.App.1994). The trial court is directed by statute to base the amount of economic loss to be awarded upon the preponderance of evidence submitted to the trial court by the prosecutor, defendant, victim, or presentence investigator. I.C. § 19–5304(6). The determination of the amount of restitution is a question of fact for the trial court whose findings will not be disturbed if supported by substantial evidence. *State v. Hamilton,* 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct.App. 1997). We will not overturn an order of restitution unless an abuse of discretion is shown. *Richmond,* 137 Idaho at 37, 43 P.3d at 796. When a trial court's discretionary decision is reviewed on appeal, the appellate

court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger,* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

### 1. Valuation of stolen items

Smith asserts that the victim is only owed restitution for any economic loss actually suffered. Consequently, Smith contends that the district court erred in awarding the victim the retail value of the items she stole, when the victim purchased the items at dealer cost prices.

In determining the amount of restitution to order a defendant pay to a crime victim, the trial court "shall consider the amount of economic loss sustained by the victim as a result of the offense, the financial resources, needs and earning ability of the defendant, and such other factors as the court deems appropriate." I.C. § 19–5304(7). Restitution may only be awarded for actual economic loss suffered by the victim. I.C. § 19–5304(1)(a), (2). Economic loss is defined by statute as including, but not being limited to, "the value of property taken, destroyed, broken, or otherwise harmed, lost wages, and direct out-of-pocket losses or expenses." I.C. § 19–5304(1)(a). For the purposes of determining restitution, the value of property is defined as "the market value of the property at the time and place of the crime, or if such cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the crime." I.C. § 18–2402(11)(a); *see also* I.C. § 19–5304(1)(c).

▮ This Court exercises free review over the application and construction of statutes. *State v. Reyes,* 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct.App.2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode,* 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Bur-*

*night,* 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar,* 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct.App.2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight,* 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar,* 134 Idaho at 389, 3 P.3d at 67.

As specified by the Idaho Code, in determining the restitution owed by Smith the district court may consider the value of any property stolen by Smith, and the value of that property is to be calculated according to its "market value," so long as that value can be satisfactorily ascertained. *See State v. Bybee,* 115 Idaho 541, 544, 768 P.2d 804, 807 (Ct.App.1989); *see also* I.C. § 18–2402(11)(a); I.C. § 19–5304(1)(a). We now hold that, generally, the "market value" of consumer goods is the reasonable price at which the owner would hold those goods out for sale to the general public, as opposed to the "cost of replacement" which would be the cost for the owner to reacquire the same goods. *See* I.C. § 18–2402(11)(a); *see also Garrison v. State,* 553 So.2d 1377, 1379 (Fla. Dist.Ct.App.1989) (Restitution for items stolen from a retailer may include the value of the lost sales profit and therefore the market value may be the retail price of the stolen items.); *Garrett v. State,* 175 Ga.App. 400, 333 S.E.2d 432, 435 (1985) (Restitution for stolen items is the full market value of the items which is the price the owner would offer the items for sale to the public.); *T.C. v. State,* 839 N.E.2d 1222, 1228 (Ind.App.2005) (Depending on the evidence presented, a trial court may award restitution based upon the stolen items retail value.); *In re T.M.R.,* 334 Mont. 64, 144 P.3d 809, 812 (2006) (Market value is generally the prices offered by merchants for their merchandise.). Therefore, the district court did not err in calculating the amount of restitution owed for the property stolen by Smith by using the ascertained retail value of that property.

**2. Returned ATVs**

Three of the ATVs stolen by Smith were returned to the victim. The district court awarded the victim restitution in the amount of the difference between the current value of the ATVs and the value at the time of taking. On appeal, Smith now argues the district court erred in failing to find that there were accessories attached to the returned ATVs, which would have increased their value and, therefore, further offset the amount of restitution she owed. Smith also argues that, if the retail value is the correct method of valuation, then the district court failed to use the reported original retail value of the ATVs when calculating the total to be offset from the restitution award.

**a. Accessories**

The victim's amended affidavit presented no facts to the district court that the three returned ATVs had any accessories attached to them. At the restitution hearing, the victim testified that there might have been accessories on the returned ATVs and such accessories would have some value. However, no evidence was presented to the district court demonstrating what specific accessories were on each ATV, what their market value was when new, and what their current value would be.

The district court was provided with no substantive evidence to support a finding that additional accessories were attached to the returned ATVs. Therefore, the district court did not err in failing to make a finding that any accessories were attached to the returned ATVs. Accordingly, the district court correctly assigned to the ATVs a value that was ascertainable from the facts presented to it, which did not include any evidence of a value increase resulting from accessories.

**b. Retail value**

The district court's memorandum decision regarding restitution specified that the victim was to be awarded the difference between the retail value of the ATVs at the time of taking and their current value as used items. Upon review of the record, we determine that the district court relied on the victim's affidavit in support of restitution which listed the original dealer cost value of

the ATVs but mislabeled those figures as the retail value. Therefore, Smith is correct in asserting on appeal that the district court did not use the ascertained retail values of the ATVs. However, the district court always used the same values for the three ATVs throughout the restitution order. While the district court did rely upon the mislabeled figures provided in the affidavit, it made no accounting error as the values it used are consistent. Consequently, no error has been shown as the amount awarded for the difference between the original and current value of the ATVs is supported by substantial evidence and is the amount specified in the state's affidavit.[2]

### 3. Check payments

■■■ During the restitution hearing, Smith presented to the district court copies of checks drawn from her personal bank account, made out to the victim, for various sums of money. Smith argues that these checks, totaling $5,811.32, were written to pay for items invoiced to her account and should be subtracted from the restitution owed.

Smith testified at the hearing that the checks had been made out to pay for items charged to her account. During Smith's testimony she was able to recall what item some of the checks were intended to pay for, but was unsure as to what other checks were intended for. The checks themselves provided no indication as to what they had been written for. Furthermore, testimony from the forensic accountant who worked on the case established that any payments for items invoiced to Smith would have been recorded via computer. Such payments would have been part of the accounts receivable printout presented to the district court in the victim's affidavit. None of the checks proffered by Smith were recorded on her account. When cross-examined at the hearing as to why these payments did not appear on her account, Smith opined that either the victim and the accountant did not know how to use

the computer invoicing system or they were being intentionally dishonest.

While the checks indicate Smith provided funds to the victim during her employment, she has failed to prove by a preponderance of the evidence that the checks presented correlated to any of the items invoiced to her and not paid for as recorded by her in-store account. The state, on the other hand, provided the district court with substantial forensic accounting evidence of the items which Smith acquired through her account and then never paid for. Therefore, we will not disturb the district court's refusal to reduce the restitution awarded by the sum of the checks presented by Smith during the hearing.

### 4. Invoiced ATV

■■■ The victim reconstructed Smith's in-store account record, part of which had been deleted by Smith herself and the rest damaged in an unrelated hard drive crash. Smith's in-store account record established that numerous items were invoiced to her, but never paid for, including five ATVs. Four of the ATVs invoiced to Smith's account have been physically accounted for and the fifth has not. Smith argues that the state provided insufficient evidence to demonstrate that the fifth ATV invoiced to her in-store account ever actually existed as there is no VIN number recorded for the ATV, nor has it been physically located. We disagree.

The account record includes an invoice number to identify every item invoiced on Smith's account and not paid for, including the ATV in question. In addition to the reconstructed accounting records, the victim provided testimony that it was Smith who had created the invoice for the ATV herself and put it on her account as a purchased item. We note also that evidence was presented establishing Smith often deleted invoiced items, or put in incorrect information, in order to hide her illicit activities. We conclude that the state demonstrated, by a preponderance of the evidence, that the listed ATV was part of the economic loss suf-

2. We note that, had the district court utilized the listed retail value of the ATVs when new, the difference between that value and their current value would have been significantly greater. As

a result, Smith would have been ordered to pay several thousand dollars more than the current restitution award she now challenges on appeal.

fered by the victim as a result of Smith's criminal activity. Accordingly, the district court did not abuse its discretion by including the value of the listed ATV in the restitution award.

### 5. Noninvoiced merchandise

The victim's affidavit provided a list of forty-nine categories of additional items allegedly stolen by Smith. However, none of the items on the list were invoiced to Smith on her in-house account or had any identifying inventory or invoice number. Eight of the listed items had been seized by the police and returned to the victim. The district court awarded the victim $15,862.16 for the noninvoiced items. Smith argues the state failed to provide sufficient evidence that these items were taken by her.

We note again that the legislature has established that economic losses are to be determined by a civil preponderance of the evidence standard. I.C. § 19–5304(6); *Richmond*, 137 Idaho at 38, 43 P.3d at 797. We review restitution orders under an abuse of discretion standard. *Richmond*, 137 Idaho at 37, 43 P.3d at 796. At the restitution hearing, the state argued that the victim and a few other individuals witnessed Smith with the items on the list. However, only the victim testified as to the items he had seen. The witnesses listed in the affidavit did not testify, nor did those witnesses provide individual affidavits. The victim admitted he personally never saw any of the items in Smith's possession but, rather, in photographs of Smith on various outdoor trips with customers from the store. The victim admitted that the items he saw in the photographs could have been purchased through other retailers. Furthermore, the victim also admitted that three of the items on the list had been sold to Smith's husband by the victim.

The state provided no evidence to positively identify these items as having been either invoiced by Smith or as being missing from the victim's inventory. The victim only witnessed photographs of Smith with items that she could have acquired from sources other than his store inventory. The state did not present testimony or affidavits from other individuals who allegedly saw Smith with other items from the store. Therefore, the state has failed to demonstrate by a preponderance of the evidence that the noninvoiced items were part of the economic loss suffered by the victim as a result of Smith's criminal activity. The district court abused its discretion in awarding restitution for the noninvoiced items. However, in regard to those noninvoiced items seized by the police and returned, the victim is entitled to an award that is the difference between the market value of the items, at the time of taking, and their value at the time of their return. Accordingly, we reverse the order of restitution and remand to the district court for a recalculation of the financial loss for the non-invoiced items, as consistent with this opinion.

### III.

### CONCLUSION

The sentences imposed upon Smith by the district court are not excessive in light of the seriousness of the crime and the damage done to the victim. Smith's fleeing the state after pleading guilty, failing to take responsibility for her actions, and factors in the PSI indicating her propensity to re-offend, further justify her sentences. Similarly, the district court did not abuse its discretion in denying Smith's Rule 35 motion as Smith's motion provided no new evidence demonstrating her sentences were excessive. However, while the district court did not err in using the retail value of the stolen goods when awarding restitution or in its restitution calculation for the majority of the victim's financial losses, the district court did abuse its discretion in awarding the victim restitution for the noninvoiced items listed in the victim's affidavit. Accordingly, we affirm Smith's judgment of conviction and sentences and the order denying Smith's Rule 35 motion. However, we reverse the district court's order of restitution and remand for further proceedings consistent with this opinion.

Judge GUTIERREZ, concurs.

Judge LANSING, Specially Concurring.

The question raised by Smith concerning the proper valuation, for restitution purposes, of inventory stolen from a retail merchant is not susceptible to a pat answer. Idaho Code §§ 19–5304(c), 18–2402(11), which define value for restitution as "market value," beg the question, "Which market?" Where the victim is a retail merchant, there are at least two potentially relevant markets—the retail market in which the victim resells goods and the wholesale market in which the victim acquires the goods. I agree with the lead opinion that where a retailer's inventory items have been stolen or destroyed, the correct valuation for restitution purposes will generally be the retail market value of the items. Smith's argument—that the victim gains a windfall if the retail value is used because the victim retailer paid only the wholesale value to acquire the merchandise—overlooks other possible components of loss such as the lost opportunities for sales and a multitude of overhead costs that add to the retailer's expense of acquiring and holding merchandise in inventory. Smith has not shown that restitution measured by wholesale value would fully compensate the victim here.

That is not to say that the list price placed on the item by the retailer will in all circumstances constitute the retail market value. Particularly for "big ticket" merchandise such as automobiles, the merchant's list price and the true retail value may not be the same.

Further, although retail value may generally be the appropriate measure of value of destroyed or stolen merchandise of a retailer, it ultimately may not be the proper measure of restitution. Restitution may be ordered only "for any economic loss which the victim actually suffers." I.C. § 19–5304(2). Therefore, a defendant should be given an opportunity to show that the retail market value is not an accurate measure of a victim merchant's true economic loss. Smith had the opportunity but did not make that showing here. Consequently, the retail market value utilized by the district court as the measure of restitution is properly affirmed.