# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 46518

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: May 20, 2020** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| MARISSA SHANNEL DEMPSEY, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Elmore County. Hon. Nancy Baskin, District Judge.

Judgment of conviction as to Count XII, grand theft, vacated; judgment of conviction as to all other counts, affirmed; order of restitution, vacated in part and affirmed in part; and case remanded.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

---

HUSKEY, Chief Judge

Marissa Shannel Dempsey was convicted of eight counts of burglary, five counts of grand theft, and three counts of petit theft and ordered to pay restitution to the crime victims. On appeal, Dempsey alleges: (1) the State did not present sufficient evidence to prove beyond a reasonable doubt that she committed grand theft as alleged in Count XII; (2) the State committed prosecutorial misconduct during closing arguments amounting to fundamental error; and (3) the district court abused its discretion because its restitution order was not supported by substantial evidence of economic loss. First, because there was insufficient evidence to establish the value of the property stolen exceeded $1,000, we vacate the judgment of conviction as to Count XII, grand theft. Second, because Dempsey did not establish that fundamental error occurred at trial, we affirm the judgment of conviction as to all other counts. Finally, because there was insufficient evidence to support the order of restitution pertaining to Yuki Cook's coin

1

collections and perfume, we partially vacate the order of restitution. All other portions of the order of restitution are affirmed. This case is remanded to the district court for proceedings consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

After a string of burglaries and thefts, the State charged Dempsey with eight counts of burglary, five counts of grand theft, and three counts of petit theft. During the trial, a victim testified regarding Count XII, grand theft. The victim's house had been broken into and a jewelry box had been stolen. The victim testified that the jewelry box had been "stuffed" with jewelry and family mementos from World War I and World War II. When asked about the collective value of the items in the jewelry box, the victim replied "[t]o me, priceless." However, the victim testified that she estimated the collective value of the property to be between "6 to 10,000 perhaps, I don't know." The witness also testified that an antique porcelain bowl was stolen, but she did not testify as to its value.

At the close of the trial, the district court instructed the jury as to what was, and what was not, to be considered as evidence during its deliberations. The court instructed the jury that its factual findings must be based upon the sworn testimony of witnesses, admitted exhibits, and stipulated facts, not the arguments presented by the lawyers. "Certain things you have heard or seen are not evidence, including, one, arguments and statements by lawyers. The lawyers are not witnesses. What they say in their opening statements, closing arguments and at other times . . . is not evidence." Subsequently, both parties presented closing argument.

In its closing argument, the prosecutor discussed the emotional and mental impact the crimes had upon the victims. The prosecutor stated that as a result of the crimes, the victims are:

> [i]nsecure in their own homes. Get emotional when they see pictures of what happened to their home on the day of the burglary. You cannot recover irreplaceable family heirlooms that have been handed down through generations. And you are going to have feelings about that even if they aren't worth anything.
> . . . . The victims are never ever going to forget the day they walked into their homes and found out that they had been violated. Someone had gone in their inner sanctuary, in their bedroom, and stolen things of value, both monetary and worse, sentimental, irreplaceable items. They will never forget that. They will never stop double-checking their doors. They are never going to stop wondering why the garage door is open when they thought they shut it.

The prosecutor continued:

We need to protect the community. We need to protect this place we live and work in. We need to protect future potential victims. And we can do that. We are in a unique opportunity to hold someone accountable that will hopefully tell the rest of the county that this is not okay.

During Dempsey's closing argument, her counsel agreed the victims experienced emotional trauma as a result of the crimes and it was important to hold someone accountable. However, her counsel disagreed with the State that Dempsey was guilty of the crimes. In support of Dempsey's innocence, her counsel noted that although three witnesses identified Dempsey in a photo array during law enforcement's investigation into the crimes, the jury should not give these identifications much weight:

But who showed [the photo array] to the witnesses? It was Detective Parlin. And what was different about Detective Parlin? He knew who he was looking for. He knew that Marissa Dempsey was number two. And the significance of that is it is also human nature, you can't help but indicate, when you are looking for an answer, what the answer is you want. . . .

Now, Detective Parlin testified that the three witnesses who identified picture number two as being the person that they saw or spoke to, he said that they identified her. He didn't give any of the details as to how that identification came about, whether anybody hesitated, whether anybody may have thought, okay, maybe it is number two or maybe it is number six and he directed them to correct one or any of those details. We also didn't get any of those details from the persons who identified on the witness stand that number two was the person that they saw.

Number two is Marissa, but there are five other pictures there that I want you to look at very carefully and tell me would you be able to tell those five from the sixth one when your contact with that person is very short or at a significant distance.

And it is also significant that two of the three people who did identify Marissa's picture in that six pack testified that they could not identify her here in the courtroom today.

In its rebuttal closing, the prosecutor emphasized that the witnesses who made the identifications did not have a "dog in the fight." Further, she stated she found it disturbing that Dempsey questioned the integrity of Detective Parlin and the witnesses.

The jury found Dempsey guilty on all counts, and the district court sentenced Dempsey to ten years, with five years determinate, for each count of burglary; fourteen years, with five years determinate, for each count of grand theft; and one year for each count of petit theft, with the sentences to run concurrently. The court reserved the issue of restitution and set a restitution hearing.

3

As a result of the restitution hearing, the court issued an order of restitution which reflected, among other awards: $1,135.00 to Joanne Colwell for the cost of reissuing stock and marriage certificates; $6,261.06 to Sharon Grinde-Ash for the value of stolen jewelry; $2,520.00 to Christie Batruel and Tony Ullrich for the value of stolen electronics; and $23,750.00 to Yuki Cook for the value of stolen coin collections; bottles of Dior, Poison, and Mitsouko perfume; and a Chanel purse. Dempsey timely appeals.

## II.

## ANALYSIS

On appeal, Dempsey alleges: (1) the State did not present sufficient evidence that the value of the property stolen exceeded $1,000 to prove the elements of grand theft as alleged in Count XII beyond a reasonable doubt; (2) the State committed prosecutorial misconduct during closing arguments amounting to fundamental error; and (3) the district court erred in its restitution order pertaining to victims Colwell, Grinde-Ash, Batruel and Ullrich, and Cook because the order was not supported by substantial evidence of economic loss.

### A.     The State Did Not Present Sufficient Evidence to Support a Conviction for Count XII, Grand Theft

Dempsey alleges the State presented insufficient evidence to support a conviction for grand theft as alleged in Count XII because the State failed to establish beyond a reasonable doubt that the value of the property exceeded $1,000. Dempsey argues the only evidence to support the value of the property at issue was testimony from the owner which represented a guess as to what the property was worth at the time it was stolen. Dempsey reasons this is insufficient evidence to sustain her conviction and, therefore, this Court should reduce the judgment of conviction to reflect a misdemeanor conviction for petit theft. In response, the State argues it presented sufficient evidence to sustain the felony conviction because an owner may testify as to an item's value and the owner testified that the value of the items in the jewelry box exceeded $1,000.[1]

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable

---

[1]     Additionally, the State argues the owner also testified to the fact that an antique porcelain bowl was stolen in addition to the jewelry box, and this bowl may have contributed to the jury's finding that the value of the items stolen exceeded $1,000. However, because no testimony was provided as to the value of the bowl, there was not substantial evidence from which a reasonable trier of fact could determine its value.

4

trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Idaho Code Section 18-2407 creates two categories of theft based on the value of the property at issue. If the value of the property stolen exceeds $1,000, the charge is classified as grand theft, a felony. I.C. § 18-2407(b)(1). However, if the value of the property does not exceed $1,000, the charge is classified as petit theft, a misdemeanor. I.C. § 19-2407(2). The value of the property taken should be determined by the market value of the property at the time and place of the crime. I.C. § 18-2402(11)(a). If the market value cannot be satisfactorily ascertained, its value should be determined by the cost of replacement of the property within a reasonable period of time after the crime. I.C. § 18-2402(11)(a). If the value of the property cannot be satisfactory ascertained pursuant to these standards, its value shall be deemed to be $1,000 or less. I.C. § 18-2402(11)(c).

The State bears the burden of establishing the elements of grand theft, including the value of the property stolen, beyond a reasonable doubt. I.C. § 18-2407(b)(1); *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101. The State may rely on testimony from the owner of stolen property to establish the property's market value without the owner being qualified as an expert in valuation. *State v. Vandenacre*, 131 Idaho 507, 509-10, 960 P.2d 190, 192-93 (Ct. App. 1998). Although the State may use an owner's testimony to establish the market value of stolen property, this Court has recognized that standing alone such evidence may be insufficient to support a conviction for grand theft. *Id.* at 509, 960 P.2d at 192. In cases where Idaho appellate courts have found the evidence was sufficient to support the valuation, the testimony at issue has been sufficiently developed or otherwise supported by additional evidence. *See State v. Stricklin*, 136 Idaho 264, 270, 32 P.3d 158, 164 (Ct. App. 2001) (owner used ledger information to determine amount of cash stolen by defendant); *State v. Fry*, 124 Idaho 71, 73, 856 P.2d 108,

110 (Ct. App. 1993) (store owner testified to value of items stolen from store and defendant's testimony supported sufficiency of evidence finding).

The State relies on *Vandenacre* to support its assertion that the owner's testimony as to the value of the goods stolen was sufficient to support Dempsey's conviction for Count XII, grand theft. In *Vandenacre*, the State charged the defendant with grand theft for stealing a stereo system from the victim's home. *Vandenacre*, 131 Idaho at 509, 960 P.2d at 192. The State elicited testimony from the victim, the owner of the stereo system, and from the sheriff about the value of the stereo system. *Id.* The victim testified the stereo was worth $850 at the time it was stolen and stated she based this valuation on her understanding of the phrase fair market value, information she received from individuals who sold new and used stereos, and her own familiarity with the sale price of similar systems. *Id.* The sheriff's testimony reflected a similar valuation for the system based on what he would have been willing to pay for it. *Id.* This Court noted that "[s]tanding alone, however, such evidence may very well have been insufficient to support a verdict finding [the defendant] guilty of grand theft." *Id.* However, after consideration of the evidence placed before the jury by both the State and the defendant, this Court found sufficient evidence existed to support the grand theft conviction. *Id.* at 510, 960 P.2d at 193.

Here, the evidence provided to support the valuation of the stolen items was far less than that provided in *Vandenacre*. The entirety of the evidence as to the value of the stolen property consisted of the owner testifying that the stolen jewelry box was "stuffed" with jewelry and family memorabilia which she estimated collectively was worth "6 to 10,000 perhaps, I don't know." The State did not elicit testimony concerning how the owner came to that valuation, descriptions of any of the property, details of the purchase prices of any of the jewelry, when any of the jewelry was purchased, what condition the items were in, or whether the owner's valuation represented the fair market value or the purchase price of the items. The State presented no other evidence related to the contents of the jewelry box or its fair market value.[2] Under these facts,

---

[2]     On appeal the State argues that Exhibit 19 could have been substantial evidence that the value of the property within the jewelry box exceeded $1,000. Exhibit 19 was identified as a list of property recovered in relation to Count XII. It does not appear that that list has been included in the record on appeal. While missing portions of the record generally support the action taken in the trial court, there is no reasonable inference that Exhibit 19 reflected the market value (or the replacement value) of the items included in Count XII, otherwise the owner would not have needed to guess that the "value" of the property identified was somewhere between "6 to 10,000" dollars. Therefore, Exhibit 19 is not substantial evidence that the State met its burden of proving

the owner's vague testimony as to the value of the property is not substantial evidence upon which a reasonable trier of fact could have found the State sustained its burden of proving, beyond a reasonable doubt, that the value of the property stolen exceeded $1,000. Therefore, there was not sufficient evidence to support Dempsey's conviction for Count XII, grand theft. Accordingly, the judgment of conviction as to Count XII, grand theft, is vacated and that count is remanded to the district court for further proceedings consistent with this opinion.

**B.**     **Dempsey Did Not Establish the State Committed Prosecutorial Misconduct Under the Fundamental Error Analysis**

Dempsey argues the State committed prosecutorial misconduct amounting to fundamental error during closing argument by impermissibly: (1) appealing to the suffering of the victims and the importance of protecting the community; and (2) bolstering witness testimony. In response, the State contends Dempsey's arguments fail under every prong of the fundamental error analysis.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

Closing argument should not include counsel's personal opinions and beliefs about the credibility of a witness or the guilt or innocence of the accused. *Phillips*, 144 Idaho at 86, 156 P.3d at 587; *see also State v. Garcia*, 100 Idaho 108, 110-11, 594 P.2d 146, 148-49 (1979); *State v. Priest*, 128 Idaho 6, 14, 909 P.2d 624, 632 (Ct. App. 1995); *State v. Ames*, 109 Idaho 373, 376, 707 P.2d 484, 487 (Ct. App. 1985). A prosecuting attorney may express an opinion in argument

---

the property stolen exceeded $1,000. Additionally, on appeal the State relies on evidence from the restitution hearing to support its argument that the value of the property exceeded $1,000. Although the evidence provided at the restitution hearing indicates that the property's value exceeded $1,000, this evidence was not before the jury at the criminal trial and therefore cannot be used to establish the evidence presented to the jury was sufficient to support the jury's verdict finding Dempsey guilty of grand theft as alleged in Count XII.

as to the truth or falsity of testimony or the guilt of the defendant when such opinion is based upon the evidence, but the prosecutor should exercise caution to avoid interjecting his or her personal belief and should explicitly state that the opinion is based solely on inferences from evidence presented at trial. *Phillips*, 144 Idaho at 86 n.1, 156 P.3d at 587 n.1. The safer course is for a prosecutor to avoid the statement of opinion, as well as the disfavored phrases "I think" and "I believe" altogether. *Id.* Appeals to emotion, passion, or prejudice of the jury through the use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588; *see also State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *State v. Pecor*, 132 Idaho 359, 367, 972 P.2d 737, 745 (Ct. App. 1998).

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). However, when a defendant alleges that a constitutional error occurred at trial and the alleged error was not followed by a contemporaneous objection, the claim of error must be reviewed under the fundamental error doctrine. *State v. Miller*, 165 Idaho 115, 119, 443 P.3d 129, 133 (2019). In order to obtain relief under the fundamental error doctrine, the defendant must demonstrate three things. First, the defendant must show that one or more of the defendant's unwaived constitutional rights were violated. *Id.* Second, the error must be clear or obvious, meaning the record must demonstrate evidence of the error and evidence as to whether or not trial counsel made a tactical decision in failing to object. *Id.* Third, the defendant must demonstrate that the error affected the defendant's substantial rights, which means the error identified in the first and second prongs of the test actually affected the outcome of the trial. *Id.* at 119-20, 443 P.3d at 133-34.

Under the second prong of the analysis, the defendant must show the record contains evidence of the error and evidence that defendant's counsel did not make a tactical decision not to object to the error. *Miller*, 165 Idaho at 119, 443 P.3d at 133. In determining whether the lack of an objection by trial counsel was tactical, the court begins with the strong presumption that counsel was competent and trial tactics were based on sound legal strategy. *State v. Saenz*, ___ Idaho ___, ___ P.3d ___ (Ct. App. March 10, 2020). The defendant's opinion that counsel did not make a strategic decision is not enough to overcome this presumption of competence. *Id.*; *see also Miller*, 165 Idaho at 119, 443 P.3d at 133. Rather, there must be actual evidence in the record that demonstrates the lack of objection was not tactical. *Saenz*, ___ Idaho at ___, ___ P.3d at ___; *Miller*, 165 Idaho at 119, 443 P.3d at 133.

Further, under the third prong of the analysis, courts have consistently held prosecutorial misconduct during closing arguments will rise to the level of fundamental error only if the misconduct was so egregious or inflammatory that any ensuing prejudice could not have been remedied by a curative jury instruction informing the jury to disregard the comments. *State v. Gross*, 146 Idaho 15, 18, 189 P.3d 477, 480 (Ct. App. 2008). When assessing the impact of a remedial jury instruction "this Court presumes the jury followed the court's jury instructions," *Miller*, 165 Idaho at 118, 443 P.3d at 136, even when the error complained of occurs after the jury receives its instructions from the trial court, *see State v. Tupis*, 112 Idaho 767, 773, 735 P.2d 1078, 1084 (Ct. App. 1987).

### 1. Prosecutor's comments related to the suffering of the victims and the safety of the community did not constitute fundamental error

Dempsey argues the State committed prosecutorial misconduct under the fundamental error analysis by making impermissible emotional appeals to the jury in its closing argument. Dempsey alleges the prosecutor's statements regarding the emotional trauma the victims experienced and her appeal for the jury to hold someone accountable for the crimes inflamed the passions and prejudices of the jury, asked the jury to decide the case based upon something other than the facts and evidence presented, and lowered the State's burden of proof. The State responds that, "while perhaps inadvisable," the statements fail every prong of the fundamental error standard. Assuming without deciding the statements concerning the victim's experiences and the importance of community safety violated one of Dempsey's unwaived constitutional rights, Dempsey has not established fundamental error under both the second and third prongs of the fundamental error standard.

Under the second prong, Dempsey has failed to establish that the error complained of is clear or obvious. Dempsey does not point to evidence in the record to show that her counsel did not make a strategic decision by not offering an objection to the State's comments. Instead, Dempsey broadly argues the decision could not have been strategic because there is no reasonable reason why counsel would want such statements to come into the trial proceedings. However, as the Idaho Supreme Court held in *Miller*, whether trial counsel made a tactical decision by not objecting is a claim that must be supported by evidence in the record. *Miller*, 165 Idaho at 119, 443 P.3d at 133. Appellant's opinion that the silence could not have been tactical because it could not have benefitted the defendant is not enough to satisfy this requirement because such opinion simply is not evidence in the record. *Id.* Therefore, Dempsey

9

has not pointed to evidence in the record that meets her burden under the second prong of the fundamental error analysis.

Additionally, the record contains evidence that Dempsey's counsel made a strategic decision not to object to the prosecutor's comments. During the State's closing argument, the prosecutor described the impact of the crimes upon the victims and the unique position of the jury to ensure community safety by holding someone accountable for the crimes. Instead of contemporaneously objecting, the record shows Dempsey's counsel responded to the State's assertions by framing his closing argument as a response to the statements and using the same appeals to Dempsey's benefit.

Throughout closing argument, Dempsey's counsel repeatedly expressed his own sympathies for the victims and aligned his desires for accountability with that of the State. He emphasized that he personally related to the experiences of the victims; he knew the pain and the powerlessness felt by the victims because he was a victim of crime himself. He discussed his own experience and desire for justice. He acknowledged because of the crime perpetrated against them, the victims will feel unsafe, even in their own homes:

> By and large, people feel confident in the safety of their homes. And it is a very, very sad thing that these incidents have made it so these folks will no longer feel safe in their homes. They will feel the necessity to lock their doors at all times and not let anybody in just willy-nilly.

Finally, he acknowledged that in theft cases, there is a "human essential desire for closure" and that "it is normal, it is entirely normal for any person to want to see justice done, to want to see somebody held accountable for what are frankly despicable crimes. I share that with you. But, what I don't share with the State is a belief that Marissa Dempsey was involved in these."

These statements demonstrate that Dempsey's counsel made a strategic decision not to contemporaneously object to the prosecutor's comments about the trauma the victims experienced and the importance of holding someone accountable for the crimes. Instead, counsel chose to respond directly to the prosecutor's assertions and appeals, utilizing the same theme, during his closing argument. Because the record demonstrates defense counsel's absence of objection was tactical, Dempsey has not established clear error under the second prong of the fundamental error analysis.

However, even if Dempsey could show clear error in the record, she has not established the error actually affected the outcome of the trial, as required under the third prong of the

analysis. First, Dempsey has not provided any argument as to why the prosecutor's statements were so egregious or inflammatory that any potential damage could not have been cured by the district court's instruction to the jury to only consider evidence during its deliberations and that the parties' closing arguments were not evidence. We presume that the jury followed the district court's instructions. *See State v. Kilby*, 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997); *State v. Hudson*, 129 Idaho 478, 481, 927 P.2d 451, 454 (Ct. App. 1996). Dempsey offers no evidence to overcome this presumption.

Additionally, Dempsey has not established that she was prejudiced by the prosecutor's comments because there existed substantial and overwhelming evidence of Dempsey's guilt. During the course of the trial, the State presented evidence that eyewitnesses identified Dempsey as the person that was near scenes of three of the burglaries; stolen items were recovered from Dempsey's storage shed and vehicle; Dempsey sent text messages that indicated she was in the county on the date of several of the burglaries (despite her statements to the contrary); and Dempsey had conducted internet research on how to determine the authenticity of gold jewelry and where to sell gold and silver in the area. Further, Dempsey admitted that she had served as a lookout during burglaries. Given this evidence, Dempsey cannot show that the prosecutor's references to the emotional impact of the burglaries on the victims and the importance of community safety actually impacted the outcome of the proceedings. Accordingly, Dempsey has not established fundamental error.

### 2. Prosecutor's comments related to the credibility of witnesses did not constitute fundamental error

Dempsey alleges the State committed prosecutorial misconduct under the fundamental error standard during its rebuttal closing argument by bolstering the credibility of the State's witnesses who positively identified Dempsey during law enforcement's investigation of the crimes. Specifically, Dempsey challenges the prosecutor's statements that the witnesses "had no dog in the fight"; she found it disturbing that Dempsey would challenge the witnesses' integrity; and she expressed her belief that the evidence did not show the witnesses lied about their identifications. Dempsey asserts these comments violated her due process rights by bolstering the witnesses' credibility, mischaracterizing defense counsel's argument, expressing personal opinion, and appealing to the passions and prejudices of the jury.

Assuming without deciding that Dempsey established a violation of her unwaived constitutional rights, Dempsey has failed to establish fundamental error. Under the second prong

11

of the analysis, Dempsey heavily relies on her opinion that her counsel could not have made a strategic decision not to object to the prosecutor's comments. However, as previously articulated, Dempsey's own opinion is not evidence in the record that sufficiently demonstrates her counsel's lack of strategic decision-making.

The only evidence in the record that Dempsey points to show that her counsel's silence was not strategic is that her counsel repeatedly focused on the witnesses' identifications throughout the opening and closing arguments. However, this is not enough to demonstrate clear error in the record. Given the presumption that counsel was competent and trial tactics were based on sound legal strategy, her counsel's devotion to discussing the witnesses' identifications throughout opening and closing arguments makes it unlikely that her counsel would have failed to object to statements that he believed improperly and significantly undermined his argument. Without more, Dempsey's opinion on appeal that the prosecutor's comments were improper is not enough to overcome this presumption.

However, even if Dempsey was able to establish clear error in the record, Dempsey failed to show the statements actually impacted the outcome of the proceedings. As previously discussed, the district court instructed the jury not to consider closing arguments as evidence during its deliberations, and Dempsey does not provide argument to overcome the presumption that the jury followed the court's instructions. Additionally, the State provided substantial and competent evidence of Dempsey's guilt. Property that was stolen during the crimes was found in Dempsey's possession, location information placed Dempsey in the vicinity of the crimes on the appropriate dates and impeached her credibility, incriminating internet searches indicated Dempsey wanted to authenticate and sell gold and silver items, and Dempsey testified to some involvement with the burglaries. Given this evidence, Dempsey's assertion that the prosecutor's comments impacted the outcome of the proceedings is unpersuasive. Therefore, Dempsey did not establish prejudice as required under the third prong of the analysis. Accordingly, Dempsey has not established fundamental error.

## C. Order of Restitution

Dempsey alleges the district court abused its discretion in its order of restitution. Dempsey contends the court erred in its determination of restitution by awarding restitution to the following victims of Dempsey's thefts: (1) Colwell for the reissuance of stock and marriage

certificates; (2) Grinde-Ash for stolen jewelry; (3) Batruel and Ullrich for stolen electronics; and (4) Cook for stolen coin collections, perfume, and a Chanel purse.

Idaho Code Section 19-5304(2) authorizes a sentencing court to order a defendant to pay restitution for economic loss to the victim of a crime. The decision of whether to order restitution, and in what amount, is within the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Richmond*, 137 Idaho 35, 37, 43 P.3d 794, 796 (Ct. App. 2002); *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989). Thus, we will not overturn an order of restitution unless an abuse of discretion is shown. *Richmond*, 137 Idaho at 37, 43 P.3d at 796. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

"The decision whether to require restitution is committed to the trial court's discretion, whose findings of fact will not be disturbed if supported by substantial evidence," *State v. Schultz*, 148 Idaho 884, 886, 231 P.3d 529, 531 (Ct. App. 2008), meaning such relevant evidence as a reasonable mind might accept to support a conclusion. *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013).

### 1. Economic loss for stock and marriage certificates

Dempsey alleges the district court abused its discretion by ordering $1,135 in restitution to Colwell for the cost of having stock and marriage certificates reissued because, as Colwell had not replaced the certificates at the time of the hearing, she had not actually incurred the economic loss.[3] The State contends the restitution order properly reflected the replacement cost of the certificates and therefore was an appropriate determination of Colwell's economic loss.

Although a trial court has discretion whether to order restitution in a criminal case, a court may only award restitution for the victim's actual economic loss. I.C. § 19-5304(1)(a), (2).

---

[3] Although Colwell testified that she had not had the stock certificates reissued at the time of the restitution hearing, there was no testimony that suggested she had not had the marriage certificates reissued.

"Economic loss" includes the value of property taken, I.C. § 19-5304(1)(a), which can be determined by looking at the market value of the property at the time and place of the crime. I.C. § 18-2402(11)(a); *see also* I.C. § 19-5304(1)(c) (noting "Value" defined by I.C. § 18-2402(11)). If the market value cannot be satisfactorily ascertained, the value of the good should be determined by the cost of replacement of the property--the cost for the owner to reacquire the same good--within a reasonable period of time after the crime. I.C. § 18-2402(11)(a); *State v. Smith*, 144 Idaho 687, 693, 169 P.3d 275, 281 (Ct. App. 2007).

Here, Colwell testified that she had contacted the company who had issued the stock certificates and was told the cost of reissuing the stock certificates was $1,000. Further, she testified the replacement cost of the three stolen marriage certificates was $135. Although Colwell had not replaced the stock certificates at the time of the restitution hearing, she was not required to do so. As I.C. § 18-2402(11)(a) recognizes, sometimes the victim may reacquire the good within a reasonable amount of time after the crime; this may include after the restitution hearing itself. Moreover, nothing in the restitution statute places the burden upon the victim to actually bear the cost of replacement prior to receiving compensation for her economic loss. The district court's restitution order reflected the replacement cost of the stolen certificates and therefore was not an abuse of discretion.

### 2. Economic loss for stolen jewelry

Dempsey alleges the district court abused its discretion in ordering $6,261.06 in restitution to Grinde-Ash for the cost of the stolen jewelry because this valuation represented the purchase price of the items, not the market value at the time the items were stolen. In response, the State reasons the restitution order accurately reflected the economic loss to the victim because the jewelry was in new or like new condition, the depreciation rate on jewelry is less than other consumer goods, and the restitution order reflected the discounted purchase price of the pieces, not the full retail price.

Generally, the "market value" of consumer goods is the reasonable price at which the owner would hold those goods out for sale to the general public, as opposed to the "cost of replacement" which would be the cost for the owner to reacquire the same goods. *Smith*, 144 Idaho at 692, 169 P.3d at 280. The determination of the amount of restitution is a question of fact for the trial court, whose findings will not be disturbed if supported by substantial evidence. *State v. Hamilton*, 129 Idaho 938, 943, 935 P.2d 201, 206 (Ct. App. 1997).

14

Here, Grinde-Ash testified the jewelry was in new, or nearly new, condition and was in the original boxes at the time they were stolen. Additionally, she testified that she made an effort to determine the market value of the items prior to the restitution hearing by attempting to find matching items online but was unsuccessful. However, she testified that she researched the current prices of gold and silver and determined that, although the price of silver had substantially declined, the price of gold had increased three-fold. Based on this knowledge, she believed the market value of the pieces at the time they were stolen was somewhere between the retail price of the pieces and the discounted purchase price reflected in the original receipts.[4] However, she believed the market value was likely closer to the higher, retail price. Dempsey did not dispute the victim's underlying premise but asked "that the Court limit the recovery to the costs that are reflected in the receipts."

The district court then stated that it was going to review the documents and the testimony to determine what loss had been established by a preponderance of the evidence. In its order, the court stated it based the market value determination of the jewelry upon the documents provided during the hearing and the testimony that the items were in mint condition. Ultimately the court adjusted the order in Dempsey's favor by determining the value of Grinde-Ash's economic loss should reflect the discounted purchase price of the jewelry, not the retail price. Because the court based its award on the evidence presented, including testimony as to the market cost of the property and its condition at the time it was stolen, this Court finds that the order is supported by substantial evidence. Accordingly, the district court's restitution order was not an abuse of discretion.

### 3. Economic loss for stolen electronics

In determining that Batruel and Ullrich sustained an economic loss of $2,520 for stolen electronics, the district court reduced the purchase price of the property by twenty percent to reflect one year of depreciation. Dempsey argues the district court abused its discretion because the State did not present any evidence regarding the appropriate amount of depreciation for the electronics and, therefore, the court's twenty percent determination was purely speculative. The State contends the district court has broad discretion over restitution matters and acted within the bounds of its discretion when it estimated the appropriate amount of depreciation.

---

[4] Grinde-Ash testified that her husband was a frequent customer of the jewelry store and therefore received discounts that were reflected in the discounted purchase price on the receipts.

Idaho's restitution statute provides trial courts with broad discretion in determining the amount of restitution to be paid in a criminal action to compensate a victim for her economic loss. *State v. McKeeth*, 136 Idaho 619, 628, 38 P.3d 1275, 1284 (Ct. App. 2001). As the restitution statute anticipates, when a court determines a victim's economic loss it may be difficult to satisfactorily ascertain the value of the specific property stolen. *See* I.C. § 18-2402(11)(a). However, "the determination of the amount of restitution is a question of fact for the trial court whose findings will not be disturbed if supported by substantial evidence." *State v. Lombard*, 149 Idaho 819, 822, 242 P.3d 189, 192 (Ct. App. 2010).

Here, the only evidence before the district court was the purchase price and approximate age of the electronics. Neither party presented evidence to indicate the electronics had been used in a way that would deteriorate their condition at a heightened rate; however, the parties agreed the court should take into account some amount of depreciation to reflect that the victim purchased the items approximately one year prior to the theft. The court noted that no information was presented as to the proper amount for depreciation and Dempsey acknowledged the difficulty of determining the market value of these electronics "because we really don't have anything to base this on other than the original prices and just general knowledge of the markets for these items, that they lose a substantial amount of their value during the first year after they are purchased and put into service." Thus, the court was tasked with making a restitution determination to fully compensate the victims for their economic loss by taking into account the purchase price of the goods, their age, and some unknown amount of depreciation. Ultimately, the court found the items still had significant value in their used condition and deducted twenty percent depreciation from the purchase price of the goods. This determination was within the broad scope of a trial court's discretion, and given the relative newness of the electronics and the parties' mutual agreement that some amount of depreciation should be imposed, such a finding was supported by substantial evidence. Accordingly, the district court's restitution order was not an abuse of discretion.

### 4. Economic loss for coin collections, perfume, and purse

Dempsey argues the district court abused its discretion in ordering $23,750 in restitution to Cook because there was insufficient evidence to support $20,000 in economic loss for the coin collections, $250 in economic loss for bottles of Dior, Poison, and Mitsouko perfume, and $3,500 in economic loss for a Chanel purse. The State agrees there was insufficient evidence to

16

support the district court's restitution award for the coin collections and perfume, but contends that it presented sufficient evidence of the market value of the purse.

In its order of restitution, the district court stated that it took into account the evidence provided at the restitution hearing and during the trial. At trial, Cook's daughter testified that she had researched the market value of the purse and determined that it was valued at $3,500. During the restitution hearing, Cook testified that the value she assigned the items when assessing her economic loss reflected the market value of the property at the time the items were stolen. Therefore, there was substantial evidence that the market value of the purse was $3,500. Because the district court's order reflected this amount, it did not abuse its discretion. However, the district court's order will be vacated in regards to the coin collections and the perfume, as the parties agree the order was not supported by substantial evidence.

## III.

## CONCLUSION

Because the State presented insufficient evidence to establish the value of the property stolen exceeded $1,000, we vacate the judgment of conviction as to Count XII, grand theft. Because Dempsey did not establish fundamental error occurred at trial, we affirm the judgment of conviction as to all other counts. Finally, because there was insufficient evidence to support the order of restitution pertaining to the coin collections and perfume, we partially vacate the order of restitution pertaining to Cook. All other portions of the district court's order of restitution are affirmed. The case is remanded to the district court for proceedings consistent with this opinion.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.